# STEWART ORGANIZATION, INC., ET AL. *v.* RICOH CORP. ET AL.

No. 86–1908.   Argued February 29, 1988—Decided June 20, 1988

MARSHALL, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and BRENNAN, WHITE, BLACKMUN, STEVENS, O'CONNOR, and KENNEDY, JJ., joined. KENNEDY, J., filed a concurring opinion, in which O'CONNOR, J., joined, *post*, p. 33. SCALIA, J., filed a dissenting opinion, *post*, p. 33.

*F. A. Flowers III* argued the cause for petitioners. With him on the briefs was *Joseph W. Letzer.*

*Scott M. Phelps* argued the cause and filed a brief for respondents.

24

JUSTICE MARSHALL delivered the opinion of the Court.

This case presents the issue whether a federal court sitting in diversity should apply state or federal law in adjudicating a motion to transfer a case to a venue provided in a contractual forum-selection clause.

I

The dispute underlying this case grew out of a dealership agreement that obligated petitioner company, an Alabama corporation, to market copier products of respondent, a nationwide manufacturer with its principal place of business in New Jersey. The agreement contained a forum-selection clause providing that any dispute arising out of the contract could be brought only in a court located in Manhattan.[1] Business relations between the parties soured under circumstances that are not relevant here. In September 1984, petitioner brought a complaint in the United States District Court for the Northern District of Alabama. The core of the complaint was an allegation that respondent had breached the dealership agreement, but petitioner also included claims for breach of warranty, fraud, and antitrust violations.

Relying on the contractual forum-selection clause, respondent moved the District Court either to transfer the case to the Southern District of New York under 28 U. S. C. § 1404(a) or to dismiss the case for improper venue under 28 U. S. C. § 1406. The District Court denied the motion. Civ. Action No. 84–AR–2460–S (Jan. 29, 1985). It reasoned that the transfer motion was controlled by Alabama law and that Alabama looks unfavorably upon contractual forum-selection clauses. The court certified its ruling for interlocutory appeal,

---

[1] Specifically, the forum-selection clause read: "Dealer and Ricoh agree that any appropriate state or federal district court located in the Borough of Manhattan, New York City, New York, shall have exclusive jurisdiction over any case or controversy arising under or in connection with this Agreement and shall be a proper forum in which to adjudicate such case or controversy." App. 38–39.

see 28 U. S. C. § 1292(b) (1982 ed., Supp. IV), and the Court of Appeals for the Eleventh Circuit accepted jurisdiction.

On appeal, a divided panel of the Eleventh Circuit reversed the District Court. The panel concluded that questions of venue in diversity actions are governed by federal law, and that the parties' forum-selection clause was enforceable as a matter of federal law. 779 F. 2d 643 (1986). The panel therefore reversed the order of the District Court and remanded with instructions to transfer the case to a Manhattan court. After petitioner successfully moved for rehearing en banc, 785 F. 2d 896 (1986), the full Court of Appeals proceeded to adopt the result, and much of the reasoning, of the panel opinion. 810 F. 2d 1066 (1987).[2] The en banc court, citing Congress' enactment or approval of several rules to govern venue determinations in diversity actions, first determined that "[v]enue is a matter of federal procedure." *Id.*, at 1068. The Court of Appeals then applied the standards articulated in the admiralty case of *The Bremen* v. *Zapata Off-Shore Co.*, 407 U. S. 1 (1972), to conclude that "the choice of forum clause in this contract is in all respects enforceable generally as a matter of federal law . . . ." 810 F. 2d, at 1071. We now affirm under somewhat different reasoning.

## II

Both the panel opinion and the opinion of the full Court of Appeals referred to the difficulties that often attend "the sticky question of which law, state or federal, will govern various aspects of the decisions of federal courts sitting in

---

[2] Judge Tjoflat, in a special concurrence joined by two other judges, argued that the District Court should have taken account of, and ultimately should have enforced, the forum-selection clause in its evaluation of the factors of justice and convenience that govern the transfer of cases under 28 U. S. C. § 1404(a). 810 F. 2d, at 1071–1076. There also was a dissenting opinion by five members of the Eleventh Circuit, who argued that state law should govern the dispute and warned that the application of federal law would encourage forum shopping and improperly undermine Alabama policy. *Id.*, at 1076–1077.

diversity." 779 F. 2d, at 645. A district court's decision whether to apply a federal statute such as § 1404(a) in a diversity action,[3] however, involves a considerably less intricate analysis than that which governs the "relatively unguided *Erie* choice." *Hanna* v. *Plumer*, 380 U. S. 460, 471 (1965) (referring to *Erie R. Co.* v. *Tompkins*, 304 U. S. 64 (1938)). Our cases indicate that when the federal law sought to be applied is a congressional statute, the first and chief question for the district court's determination is whether the statute is "sufficiently broad to control the issue before the Court." *Walker* v. *Armco Steel Corp.*, 446 U. S. 740, 749–750 (1980); *Burlington Northern R. Co.* v. *Woods*, 480 U. S. 1, 4–5 (1987). This question involves a straightforward exercise in statutory interpretation to determine if the statute covers the point in dispute. See *Walker* v. *Armco Steel Corp.*, *supra*, at 750, and n. 9.[4] See also *Burlington Northern R.*

---

[3] Respondent points out that jurisdiction in this case was alleged to rest both on the existence of an antitrust claim, see 28 U. S. C. § 1337, and diversity of citizenship, see 28 U. S. C. § 1332. Respondent does not suggest how the presence of a federal claim should affect the District Court's analysis of applicable law. The Court of Appeals plurality likewise did not address this issue, and indeed characterized this case simply as a diversity breach-of-contract action. See 810 F. 2d 1066, 1067, 1068 (1987). Our conclusion that federal law governs transfer of this case, see. Part III, *infra*, makes this issue academic for purposes of this case, because the presence of a federal question could cut only in favor of the application of federal law. We therefore are not called on to decide, nor do we decide, whether the existence of federal-question as well as diversity jurisdiction necessarily alters a district court's analysis of applicable law.

[4] Our cases at times have referred to the question at this stage of the analysis as an inquiry into whether there is a "direct collision" between state and federal law. See, e. g., *Walker* v. *Armco Steel Corp.*, 446 U. S., at 749; *Hanna* v. *Plumer*, 380 U. S. 460, 472 (1965). Logic indicates, however, and a careful reading of the relevant passages confirms, that this language is not meant to mandate that federal law and state law be perfectly coextensive and equally applicable to the issue at hand; rather, the "direct collision" language, at least where the applicability of a federal statute is at issue, expresses the requirement that the federal statute be sufficiently broad to cover the point in dispute. See *Hanna* v. *Plumer*, *supra*, at

*Co.* v. *Woods, supra,* at 7 (identifying inquiry as whether a Federal Rule "occupies [a state rule's] field of operation").

If the district court determines that a federal statute covers the point in dispute, it proceeds to inquire whether the statute represents a valid exercise of Congress' authority under the Constitution. See *Hanna* v. *Plumer, supra,* at 471 (citing *Erie R. Co.* v. *Tompkins, supra,* at 77–79).[5] If Congress intended to reach the issue before the district court, and if it enacted its intention into law in a manner that abides with the Constitution, that is the end of the matter; "[f]ederal courts are bound to apply rules enacted by Congress with respect to matters . . . over which it has legislative power." *Prima Paint Corp.* v. *Flood & Conklin Mfg. Co.,* 388 U. S. 395, 406 (1967); cf. *Hanna* v. *Plumer, supra,* at 471 ("When a situation is covered by one of the Federal Rules . . . the court has been instructed to apply the Federal Rule, and can refuse to do so only if the Advisory Committee, this Court, and Congress erred in their prima facie judgment that the Rule in question transgresses neither the terms of the Enabling Act nor constitutional restrictions").[6] Thus, a district court sitting in diversity must apply a federal statute that controls the issue before the court and that represents a valid exercise of Congress' constitutional powers.

---

470. It would make no sense for the supremacy of federal law to wane precisely because there is no state law directly on point.

[5] *Hanna* v. *Plumer, supra,* identifies an additional inquiry where the applicability of a Federal Rule of Civil Procedure is in question. Federal Rules must be measured against the statutory requirement of the Rules Enabling Act that they not "abridge, enlarge or modify any substantive right . . . ." 28 U. S. C. § 2072.

[6] If no federal statute or Rule covers the point in dispute, the district court then proceeds to evaluate whether application of federal judge-made law would disserve the so-called "twin aims of the *Erie* rule: discouragement of forum-shopping and avoidance of inequitable administration of the laws." *Hanna* v. *Plumer, supra,* at 468. If application of federal judge-made law would disserve these two policies, the district court should apply state law. See *Walker* v. *Armco Steel Corp., supra,* at 752–753.

## III

Applying the above analysis to this case persuades us that federal law, specifically 28 U. S. C. § 1404(a), governs the parties' venue dispute.

### A

At the outset we underscore a methodological difference in our approach to the question from that taken by the Court of Appeals. The en banc court determined that federal law controlled the issue based on a survey of different statutes and judicial decisions that together revealed a significant federal interest in questions of venue in general, and in choice-of-forum clauses in particular. The Court of Appeals then proceeded to apply the standards announced in our opinion in *The Bremen* v. *Zapata Off-Shore Co.*, 407 U. S. 1 (1972),[7] to determine that the forum-selection clause in this case was enforceable. But the immediate issue before the District Court was whether to grant respondent's motion to transfer the action under § 1404(a),[8] and as Judge Tjoflat properly noted in his special concurrence below, the immediate issue before the Court of Appeals was whether the District Court's denial of the § 1404(a) motion constituted an abuse of discretion. Although we agree with the Court of Appeals that the *Bremen* case may prove "instructive" in resolving the parties' dispute, 810 F. 2d, at 1069; but cf. *Texas Industries, Inc.* v. *Radcliff Materials, Inc.*, 451 U. S. 630, 641–642 (1981) (federal common law developed under admiralty jurisdiction not freely transferable to diversity setting), we disagree with the

---

[7] In *The Bremen*, this Court held that federal courts sitting in admiralty generally should enforce forum-selection clauses absent a showing that to do so "would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching." 407 U. S., at 15.

[8] The parties do not dispute that the District Court properly denied the motion to dismiss the case for improper venue under 28 U. S. C. § 1406(a) because respondent apparently does business in the Northern District of Alabama. See 28 U. S. C. § 1391(c) (venue proper in judicial district in which corporation is doing business).

court's articulation of the relevant inquiry as "whether the forum selection clause in this case is unenforceable under the standards set forth in *The Bremen*." 810 F. 2d, at 1069. Rather, the first question for consideration should have been whether § 1404(a) itself controls respondent's request to give effect to the parties' contractual choice of venue and transfer this case to a Manhattan court. For the reasons that follow, we hold that it does.

## B

Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Under the analysis outlined above, we first consider whether this provision is sufficiently broad to control the issue before the court. That issue is whether to transfer the case to a court in Manhattan in accordance with the forum-selection clause. We believe that the statute, fairly construed, does cover the point in dispute.

Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an "individualized, case-by-case consideration of convenience and fairness." *Van Dusen* v. *Barrack*, 376 U. S. 612, 622 (1964). A motion to transfer under § 1404(a) thus calls on the district court to weigh in the balance a number of case-specific factors. The presence of a forum-selection clause such as the parties entered into in this case will be a significant factor that figures centrally in the district court's calculus. In its resolution of the § 1404(a) motion in this case, for example, the District Court will be called on to address such issues as the convenience of a Manhattan forum given the parties' expressed preference for that venue, and the fairness of transfer in light of the forum-selection clause and the parties' relative bargaining power. The flexible and individualized analysis Congress prescribed in § 1404(a) thus encom-

passes consideration of the parties' private expression of their venue preferences.

Section 1404(a) may not be the only potential source of guidance for the District Court to consult in weighing the parties' private designation of a suitable forum. The premise of the dispute between the parties is that Alabama law may refuse to enforce forum-selection clauses providing for out-of-state venues as a matter of state public policy.[9] If that is so, the District Court will have either to integrate the factor of the forum-selection clause into its weighing of considerations as prescribed by Congress, or else to apply, as it did in this case, Alabama's categorical policy disfavoring forum-selection clauses. Our cases make clear that, as between these two choices in a single "field of operation," *Burlington Northern R. Co.* v. *Woods*, 480 U. S., at 7, the instructions of Congress are supreme. Cf. *ibid.* (where federal law's "discretionary mode of operation" conflicts with the nondiscretionary provision of Alabama law, federal law applies in diversity).

It is true that § 1404(a) and Alabama's putative policy regarding forum-selection clauses are not perfectly coextensive. Section 1404(a) directs a district court to take account of factors other than those that bear solely on the parties' private ordering of their affairs. The district court also must weigh in the balance the convenience of the witnesses and those public-interest factors of systemic integrity and fairness that, in addition to private concerns, come under the heading of "the interest of justice." It is conceivable in

---

[9] In its application of the standards set forth in *The Bremen* to this case, the Court of Appeals concluded that the Alabama policy against the enforcement of forum-selection clauses is intended to apply only to protect the jurisdiction of the state courts of Alabama and therefore would not come into play in this case, in which case this dispute might be much ado about nothing. See 810 F. 2d, at 1069–1070. Our determination that § 1404(a) governs the parties' dispute notwithstanding any contrary Alabama policy makes it unnecessary to address the contours of state law. See n. 4, *supra*.

a particular case, for example, that because of these factors a district court acting under § 1404(a) would refuse to transfer a case notwithstanding the counterweight of a forum-selection clause, whereas the coordinate state rule might dictate the opposite result.[10]   See 15 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 3847, p. 371 (2d ed. 1986). But this potential conflict in fact frames an additional argument for the supremacy of federal law.   Congress has directed that multiple considerations govern transfer within the federal court system, and a state policy focusing on a single concern or a subset of the factors identified in § 1404(a) would defeat that command.   Its application would impoverish the flexible and multifaceted analysis that Congress intended to govern motions to transfer within the federal system.   The forum-selection clause, which represents the parties' agreement as to the most proper forum, should receive neither dispositive consideration (as respondent might have it) nor no consideration (as Alabama law might have it), but rather the consideration for which Congress provided in § 1404(a).   Cf. *Norwood* v. *Kirkpatrick*, 349 U. S. 29, 32 (1955) (§ 1404(a) accords broad discretion to district court, and plaintiff's choice of forum is only one relevant factor for its consideration).   This is thus not a case in which state and federal rules "can exist side by side . . . each controlling its own intended sphere of coverage without conflict." *Walker* v. *Armco Steel Corp.*, 446 U. S., at 752.

Because § 1404(a) controls the issue before the District Court, it must be applied if it represents a valid exercise of

---

[10] The dissent does not dispute this point, but rather argues that if the forum-selection clause would be *unenforceable* under state law, then the clause cannot be accorded any weight by a federal court.   See *post*, at 35. Not the least of the problems with the dissent's analysis is that it makes the applicability of a federal statute depend on the content of state law. See n. 4, *supra*.   If a State cannot pre-empt a district court's consideration of a forum-selection clause by holding that the clause is automatically enforceable, it makes no sense for it to be able to do so by holding the clause automatically void.

Congress' authority under the Constitution. The constitutional authority of Congress to enact § 1404(a) is not subject to serious question. As the Court made plain in *Hanna*, "the constitutional provision for a federal court system . . . carries with it congressional power to make rules governing the practice and pleading in those courts, which in turn includes a power to regulate matters which, though falling within the uncertain area between substance and procedure, are rationally capable of classification as either." 380 U. S., at 472. See also *id.*, at 473 (*"Erie* and its offspring cast no doubt on the long-recognized power of Congress to prescribe housekeeping rules for federal courts"). Section 1404(a) is doubtless capable of classification as a procedural rule, and indeed, we have so classified it in holding that a transfer pursuant to § 1404(a) does not carry with it a change in the applicable law. See *Van Dusen* v. *Barrack*, 376 U. S., at 636–637 ("[B]oth the history and purposes of § 1404(a) indicate that it should be regarded as a federal judicial housekeeping measure"). It therefore falls comfortably within Congress' powers under Article III as augmented by the Necessary and Proper Clause. See *Burlington Northern R. Co.* v. *Woods*, *supra*, at 5, n. 3.

We hold that federal law, specifically 28 U. S. C. § 1404(a), governs the District Court's decision whether to give effect to the parties' forum-selection clause and transfer this case to a court in Manhattan.[11] We therefore affirm the Eleventh Circuit order reversing the District Court's application of Alabama law. The case is remanded so that the District Court may determine in the first instance the appropriate effect under federal law of the parties' forum-selection clause on respondent's § 1404(a) motion.

*It is so ordered.*

---

[11] Because a validly enacted Act of Congress controls the issue in dispute, we have no occasion to evaluate the impact of application of federal judge-made law on the "twin aims" that animate the *Erie* doctrine.

JUSTICE KENNEDY, with whom JUSTICE O'CONNOR joins, concurring.

I concur in full. I write separately only to observe that enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system. Although our opinion in *The Bremen* v. *Zapata Off-Shore Co.*, 407 U. S. 1, 10 (1972), involved a Federal District Court sitting in admiralty, its reasoning applies with much force to federal courts sitting in diversity. The justifications we noted in *The Bremen* to counter the historical disfavor forum-selection clauses had received in American courts, *id.*, at 9, should be understood to guide the District Court's analysis under § 1404(a).

The federal judicial system has a strong interest in the correct resolution of these questions, not only to spare litigants unnecessary costs but also to relieve courts of time-consuming pretrial motions. Courts should announce and encourage rules that support private parties who negotiate such clauses. Though state policies should be weighed in the balance, the authority and prerogative of the federal courts to determine the issue, as Congress has directed by § 1404(a), should be exercised so that a valid forum-selection clause is given controlling weight in all but the most exceptional cases. See *The Bremen*, *supra*, at 10.

JUSTICE SCALIA, dissenting.

I agree with the opinion of the Court that the initial question before us is whether the validity between the parties of a contractual forum-selection clause falls within the scope of 28 U. S. C. § 1404(a). See *ante*, at 26–27, 29. I cannot agree, however, that the answer to that question is yes. Nor do I believe that the federal courts can, consistent with the twin-aims test of *Erie R. Co.* v. *Tompkins*, 304 U. S. 64 (1938), fashion a judge-made rule to govern this issue of contract validity.

## I

When a litigant asserts that state law conflicts with a federal procedural statute or formal Rule of Procedure, a court's first task is to determine whether the disputed point in question in fact falls within the scope of the federal statute or Rule. In this case, the Court must determine whether the scope of § 1404(a) is sufficiently broad to cause a direct collision with state law or implicitly to control the issue before the Court, *i. e.*, validity between the parties of the forum-selection clause, thereby leaving no room for the operation of state law. See *Burlington Northern R. Co.* v. *Woods*, 480 U. S. 1, 4–5 (1987). I conclude that it is not.

Although the language of § 1404(a) provides no clear answer, in my view it does provide direction. The provision vests the district courts with authority to transfer a civil action to another district "[f]or the convenience of parties and witnesses, in the interest of justice." This language looks to the present and the future. As the specific reference to convenience of parties and witnesses suggests, it requires consideration of what is likely to be just in the future, when the case is tried, in light of things as they now stand. Accordingly, the courts in applying § 1404(a) have examined a variety of factors, each of which pertains to facts that currently exist or will exist: *e. g.*, the forum actually chosen by the plaintiff, the current convenience of the parties and witnesses, the current location of pertinent books and records, similar litigation pending elsewhere, current docket conditions, and familiarity of the potential courts with governing state law. See 15 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure §§ 3848–3849, 3851, 3853–3854 (2d ed. 1986). In holding that the validity between the parties of a forum-selection clause falls within the scope of § 1404(a), the Court inevitably imports, in my view without adequate textual foundation, a new *retrospective* element into the court's deliberations, requiring examination of what the

facts were concerning, among other things, the bargaining power of the parties and the presence or absence of over-reaching at the time the contract was made. See *ante*, at 28, and n. 7, 29.

The Court largely attempts to avoid acknowledging the novel scope it gives to § 1404(a) by casting the issue as how much *weight* a district court should give a forum-selection clause as against other factors when it makes its determination under § 1404(a). I agree that if the weight-among-factors issue were before us, it would be governed by § 1404 (a). That is because, while the parties may decide who between them should bear any inconvenience, only a court can decide how much weight should be given under § 1404(a) to the factor of the parties' convenience as against other relevant factors such as the convenience of witnesses. But the Court's description of the issue begs the question: what law governs whether the forum-selection clause is a *valid* or *invalid* allocation of any inconvenience between the parties. If it is invalid, *i. e.*, should be voided, between the parties, it cannot be entitled to any weight in the § 1404(a) determination. Since under Alabama law the forum-selection clause should be voided, see *Redwing Carriers, Inc.* v. *Foster*, 382 So. 2d 554, 556 (Ala. 1980), in this case the question of what weight should be given the forum-selection clause can be reached only if as a preliminary matter federal law controls the issue of the validity of the clause between the parties.*

---

*Contrary to the opinion of the Court, there is nothing unusual about having "the applicability of a federal statute depend on the content of state law." *Ante*, at 31, n. 10. We have recognized that precisely this is required when the application of the federal statute depends, as here, on resolution of an underlying issue that is fundamentally one of state law. See *Commissioner* v. *Estate of Bosch*, 387 U. S. 456, 457, 464–465 (1967); cf. *Budinich* v. *Becton Dickinson & Co.*, 486 U. S. 196, 199 (1988) (dictum). Nor is the approach I believe is required undermined by the fact that there would still be some situations where the state-law rule on the validity of a forum-selection clause would not be dispositive of the issue of transfer between federal courts. When state law would hold a forum-

36

Second, § 1404(a) was enacted against the background that issues of contract, including a contract's validity, are nearly always governed by state law. It is simply contrary to the practice of our system that such an issue should be wrenched from state control in absence of a clear conflict with federal law or explicit statutory provision. It is particularly instructive in this regard to compare § 1404(a) with another provision, enacted by the same Congress a year earlier, that *did* pre-empt state contract law, and in precisely the same field of agreement regarding forum selection. Section 2 of the Federal Arbitration Act, 9 U. S. C. § 2, provides:

> "A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."

We have said that an arbitration clause is a "kind of forum-selection clause," *Scherk* v. *Alberto-Culver Co.*, 417 U. S. 506, 519 (1974), and the contrast between this explicit pre-

---

selection clause invalid the federal court could nonetheless order transfer to another federal court under § 1404(a), but it could do so only if such transfer was warranted without regard to the forum-selection clause. This is not at all remarkable since whether to transfer a case from one federal district court to another for reasons other than the contractual agreement of the parties is plainly made a matter of federal law by § 1404(a). When, on the other hand, state law would hold a forum-selection clause valid, I agree with JUSTICE KENNEDY's concurrence that under § 1404(a) such a valid forum-selection clause is to be "given controlling weight in all but the most exceptional cases." *Ante*, at 33. And even in those exceptional cases where a forum-selection clause is valid under state law but transfer is unwarranted because of some factor other than the convenience of the parties, the district court should give effect to state contract law by dismissing the suit.

emption of state contract law on the subject and §1404(a) could not be more stark. Section 1404(a) is simply a venue provision that nowhere mentions contracts or agreements, much less that the validity of certain contracts or agreements will be matters of federal law. It is difficult to believe that state contract law was meant to be pre-empted by this provision that we have said "should be regarded as a federal judicial housekeeping measure," *Van Dusen* v. *Barrack*, 376 U. S. 612, 636–637 (1964), that we have said did not change "the relevant factors" which federal courts used to consider under the doctrine of *forum non conveniens, Norwood* v. *Kirkpatrick*, 349 U. S. 29, 32 (1955), and that we have held can be applied retroactively because it is procedural, *Ex parte Collett*, 337 U. S. 55, 71 (1949). It seems to me the generality of its language—"[f]or the convenience of parties and witnesses, in the interest of justice"—is plainly insufficient to work the great change in law asserted here.

Third, it has been common ground in this Court since *Erie*, 304 U. S., at 74–77, that when a federal procedural statute or Rule of Procedure is not on point, substantial uniformity of predictable outcome between federal and state courts in adjudicating claims should be striven for. See also *Klaxon Co.* v. *Stentor Electric Mfg. Co.*, 313 U. S. 487, 496 (1941). This rests upon a perception of the constitutional and congressional plan underlying the creation of diversity and pendent jurisdiction in the lower federal courts, which should quite obviously be carried forward into our interpretation of ambiguous statutes relating to the exercise of that jurisdiction. We should assume, in other words, when it is fair to do so, that Congress is just as concerned as we have been to avoid significant differences between state and federal courts in adjudicating claims. Cf. *Southland Corp.* v. *Keating*, 465 U. S. 1, 15 (1984) (interpreting Federal Arbitration Act to apply to claims brought in state courts in order to discourage forum shopping). Thus, in deciding whether a federal procedural statute or Rule of Procedure encompasses a par-

ticular issue, a broad reading that would create significant disuniformity between state and federal courts should be avoided if the text permits. See, *e. g., Walker* v. *Armco Steel Corp.*, 446 U. S. 740, 750–751 (1980); *Cohen* v. *Beneficial Industrial Loan Corp.*, 337 U. S. 541, 556 (1949); *Palmer* v. *Hoffman*, 318 U. S. 109, 117 (1943); cf. P. Bator, D. Meltzer, P. Mishkin, & D. Shapiro, Hart and Wechsler's The Federal Courts and the Federal System 828 (3d ed. 1988) ("The Supreme Court has continued since Hanna to interpret the federal rules to avoid conflict with important state regulatory policies"). As I have shown, the interpretation given § 1404(a) by the Court today is neither the plain nor the more natural meaning; at best, § 1404(a) is ambiguous. I would therefore construe it to avoid the significant encouragement to forum shopping that will inevitably be provided by the interpretation the Court adopts today.

## II

Since no federal statute or Rule of Procedure governs the validity of a forum-selection clause, the remaining issue is whether federal courts may fashion a judge-made rule to govern the question. If they may not, the Rules of Decision Act, 28 U. S. C. § 1652, mandates use of state law. See *Erie, supra*, at 72–73; *Hanna* v. *Plumer*, 380 U. S. 460, 471–472 (1965) (if federal courts lack authority to fashion a rule, "state law must govern because there can be no other law"); *DelCostello* v. *Teamsters*, 462 U. S. 151, 174, n. 1 (1983) (O'CONNOR, J., dissenting) (Rules of Decision Act "simply requires application of state law unless federal law applies"); see also *id.*, at 159, n. 13.

In general, while interpreting and applying substantive law is the essence of the "judicial Power" created under Article III of the Constitution, that power does not encompass the making of substantive law. Cf. *Erie, supra*, at 78–79. Whatever the scope of the federal courts' authority to create federal common law in other areas, it is plain that the mere

fact that petitioner company here brought an antitrust claim, *ante*, at 24, does not empower the federal courts to make common law on the question of the validity of the forum-selection clause. See *Campbell* v. *Haverhill*, 155 U. S. 610, 616 (1895) (Rules of Decision Act "itself neither contains nor suggests . . . a distinction" between federal-question cases and diversity cases); *DelCostello, supra,* at 173, n. 1 (STEVENS, J., dissenting) (same); cf. *Texas Industries, Inc.* v. *Radcliff Materials, Inc.,* 451 U. S. 630 (1981). The federal courts do have authority, however, to make procedural rules that govern the practice before them. See 28 U. S. C. § 2071 (federal courts may make rules "for the conduct of their business"); Fed. Rule Civ. Proc. 83 (districts courts have authority to "regulate their practice"); see generally *Sibbach* v. *Wilson & Co.,* 312 U. S. 1, 9–10 (1941).

In deciding what is substantive and what is procedural for these purposes, we have adhered to a functional test based on the "twin aims of the *Erie* rule: discouragement of forum-shopping and avoidance of inequitable administration of the laws." *Hanna, supra,* at 468; see also *ante,* at 27, n. 6; *Walker* v. *Armco Steel Corp., supra,* at 747. Moreover, although in reviewing the validity of a federal procedural statute or Rule of Procedure we inquire only whether Congress or the rulemakers have trespassed beyond the wide latitude given them to determine that a matter is procedural, see *Burlington Northern R. Co.* v. *Woods,* 480 U. S., at 5; *Hanna, supra,* at 471–474, in reviewing the lower courts' application of the twin-aims test we apply our own judgment as a matter of law.

Under the twin-aims test, I believe state law controls the question of the validity of a forum-selection clause between the parties. The Eleventh Circuit's rule clearly encourages forum shopping. Venue is often a vitally important matter, as is shown by the frequency with which parties contractually provide for and litigate the issue. Suit might well not be pursued, or might not be as successful, in a significantly less

convenient forum. Transfer to such a less desirable forum is, therefore, of sufficient import that plaintiffs will base their decisions on the likelihood of that eventuality when they are choosing whether to sue in state or federal court. With respect to forum-selection clauses, in a State with law unfavorable to validity, plaintiffs who seek to avoid the effect of a clause will be encouraged to sue in state court, and nonresident defendants will be encouraged to shop for more favorable law by removing to federal court. In the reverse situation—where a State has law favorable to enforcing such clauses—plaintiffs will be encouraged to sue in federal court. This significant encouragement to forum shopping is alone sufficient to warrant application of state law. Cf. *Walker* v. *Armco Steel Corp., supra*, at 753 (failure to meet one part of the twin-aims test suffices to warrant application of state law).

I believe creating a judge-made rule fails the second part of the twin-aims test as well, producing inequitable administration of the laws. The best explanation of what constitutes inequitable administration of the laws is that found in *Erie* itself: allowing an unfair discrimination between noncitizens and citizens of the forum state. 304 U. S., at 74–75; see also *Hanna*, 380 U. S., at 468, n. 9. Whether discrimination is unfair in this context largely turns on how important is the matter in question. See *id.*, at 467–468, and n. 9. The decision of an important legal issue should not turn on the accident of diversity of citizenship, see, *e. g., Walker, supra*, at 753, or the presence of a federal question unrelated to that issue. It is difficult to imagine an issue of more importance, other than one that goes to the very merits of the lawsuit, than the validity of a contractual forum-selection provision. Certainly, the *Erie* doctrine has previously been held to require the application of state law on subjects of similar or obviously lesser importance. See, *e. g., Walker, supra* (whether filing of complaint or service tolls statute of limitations); *Bernhardt* v. *Polygraphic Co. of America*, 350 U. S.

198, 202–204 (1956) (arbitrability); *Cohen* v. *Beneficial Industrial Loan Corp.*, 337 U. S., at 555–556 (indemnity bond for litigation expenses). Nor can or should courts ignore that issues of contract validity are traditionally matters governed by state law.

For the reasons stated, I respectfully dissent.