HARVEY'S WAGON WHEEL, INC., Plaintiff–Appellee,

v.

Toshi VAN BLITTER, Defendant–Appellant.

No. 90–16477.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 10, 1991.

Decided March 25, 1992.

**154**

Robert N. Black, Black & Kopper, Davis, California, and Meredith S. Watts, San Francisco, Cal., for defendant-appellant.

Richard Glasson and Chris D. Nichols, Manoukian, Scarpello & Alling, Ltd., Stateline, Nev., for plaintiff-appellee.

Before NORRIS, BEEZER and LEAVY, Circuit Judges.

BEEZER, Circuit Judge:

This appeal raises a choice of law question of first impression: In a diversity action, should a district court apply federal rule of civil procedure 41(b), which *permits* dismissal for failure to prosecute, or should it apply Nevada rule of civil procedure 41(e), which *mandates* dismissal for failure to prosecute after five years? Applying the analytical framework set forth in *Olympic Sports Prod. v. Universal Athletic Sales Co.*, 760 F.2d 910 (9th Cir.1985), *cert. denied*, 474 U.S. 1060, 106 S.Ct. 804, 88 L.Ed.2d 780 (1986), we hold that the federal law applies and we affirm.

**I**

Toshi Van Blitter gambled and lost. She says she racked up "millions of dollars in gaming losses to Harrah's Club and to Harvey's." Some of these gaming losses are evidenced by the six negotiable instruments, totaling $60,000, that she executed, negotiated and delivered to Harvey's Wag-

on Wheel. Her bank dishonored the instruments, setting the stage for this suit.[1]

On May 9, 1985, Harvey's filed suit in federal district court in Nevada seeking payment of the $60,000 debt. Federal jurisdiction rested on diversity: Harvey's is a Nevada corporation and Van Blitter is a California citizen. On July 16, 1990—more than five years after the case was filed—Harvey's moved for summary judgment.

Van Blitter did not raise a substantive challenge to the motion. Her opposition rested on Harvey's failure to bring the case to trial within five years as required by Nev.R.Civ.P. 41(e). She also argued that if the district court looked to the federal rules instead, it should dismiss the case for failure to prosecute pursuant to Fed.R.Civ.P. 41(b). Van Blitter subsequently moved to dismiss the Harvey's complaint based on the Nevada rule.

The district court looked to the federal rule, declined to dismiss the complaint and granted Harvey's summary judgment motion. Van Blitter timely appealed, arguing that the Nevada rule applies and, therefore, that the district court was obliged to dismiss Harvey's action.

**II**

■ We review *de novo* the legal question whether state or federal law applies in a diversity action. *Olympic Sports Prods. v. Universal Athletic Sales Co.*, 760 F.2d 910, 912 (9th Cir.1985), *cert. denied*, 474 U.S. 1060, 106 S.Ct. 804, 88 L.Ed.2d 780 (1986). In construing a state law, we follow the decisions of the state's highest court. *Id.* at 912–13.

"Ever since *Erie*, the [Supreme] Court has struggled to provide criteria to determine when federal law may be used in diversity cases." Erwin Chemerinsky, *Federal Jurisdiction* 266 (1989). It does not suffice to state that a federal rule is generally procedural and therefore presumptive-

---

1. In a factually similar case, Harrah's Club sued Van Blitter after her bank dishonored $265,000 worth of credit instruments. *Harrah's Club v. Van Blitter,* 902 F.2d 774 (9th Cir.1990). Harrah's obtained a judgment in its favor from a federal court in Nevada. Van Blitter tried to

bar its enforcement in California, where she resided. This circuit held that the judgment was enforceable in California and sanctioned Van Blitter for bringing a frivolous appeal. *Id.* at 777.

ly applicable. We determine the choice of law by undertaking a multi-step inquiry. *Id.; see also* John Hart Ely, *The Irrepressible Myth of Erie,* 87 Harv.L.Rev. 693 (1974); Abram Chayes, *The Bead Game,* 87 Harv.L.Rev. 741, 741 (1974) (response to *Myth of Erie,* noting that "all of the mystification has not gone out of the *Erie* myth"); John Hart Ely, *The Necklace,* 87 Harv.L.Rev. 753 (1974) (reply).

The *Olympic* majority set forth the multi-step inquiry as follows:

> First, we must determine if the federal rule and state rule are actually coextensive. If the federal rule does not address the situation, there would be no conflict between state and federal rules. We would then apply the *Erie[ R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) ] analysis to determine if the federal court should enforce the state rule. If the federal rule does address the situation, there would be an unavoidable conflict between the state and federal rules. We would then apply the *Hanna[ v. Plumer,* 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965) ] analysis: if the federal rule is within the scope of constitutional power and the Rules Enabling Act, it applies unless the *Erie* considerations are so strong that they can justify interrupting the normal function of the federal court processes.

760 F.2d at 914–15.

In *Olympic,* the district court had entered a dismissal for lack of prosecution based on section 583(b) of the California Code of Civil Procedure. *Id.* at 912. The appellant argued that Federal Rule 41(b)—the same rule at issue here—governed dismissals in diversity cases. The *Olympic* majority interpreted the California rule to be discretionary, not mandatory. Its discretionary nature supplied one of the factors supporting the court's conclusion that the California and federal rules were coextensive. *Id.* at 915. Accordingly, the

*Olympic* court reversed the district court and held that the federal rule applies. *Id.* at 916.

Unlike the majority, the dissent interpreted the California rule to be mandatory. Given that interpretation, the dissent argued that *Erie* principles required application of the state rule. *Id.* at 917–918 (Wallace, J., dissenting). As discussed below, the Nevada rule is mandatory. Even so, application of the *Olympic* multi-step analysis, as informed by a subsequent Supreme Court decision, leads us to conclude that the federal rule applies.

### III

■ The initial inquiry is whether the federal and state rules are coextensive. As Chemerinsky notes, "[s]ometimes that is quite unclear." Chemerinsky at 269.

Federal Rule 41(b) provides in part that "[f]or failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against the defendant." When applying this discretionary rule, a trial court "considers the housekeeping interests of the court and the reasonable diligence displayed by the parties." *Olympic,* 760 F.2d at 915.

> Nevada Rule 41(e) provides in part that:
> Any action heretofore or hereafter commenced shall be dismissed by the court in which the same shall have been commenced or to which it may be transferred on motion of any party, or on the court's own motion, after due notice to the parties, unless such action is brought to trial within five years after the plaintiff has filed his action, except where the parties have stipulated in writing that the time may be extended.

Nev.R.Civ.P. 41(e).

This rule nearly mirrors the convoluted California rule considered by the court in *Olympic. See* 760 F.2d at 915.[2] The

---

2. *Olympic* sets forth the pertinent part of section 583(b) of the California Code of Civil Procedure as follows:

> Any action heretofore or hereafter commenced shall be dismissed by the court in

which the same shall have been commenced or to which it may be transferred on motion of the defendant, after due notice to the plaintiff or by the court upon its own motion, unless such action is brought to trial within

phrase "shall be dismissed," found in the California and Nevada rules, facially provides for mandatory dismissal. Looking to California case law, however, the *Olympic* majority determined that judicially recognized exceptions imparted discretion into the rule. *Id.* In appropriate situations, the California courts could decline to dismiss cases that fell within the rule. *Id.*

Nevada's judiciary declined to adopt California's discretion-imparting exceptions. *See Thran v. First Judicial Dist. Court,* 79 Nev. 176, 380 P.2d 297, 299–300 (1963) (declining to adopt exceptions recognized by California courts); *see also Erickson v. One Thirty–Three, Inc.,* 104 Nev. 755, 757–58, 766 P.2d 898, 899–900 (1988) (reaffirming mandatory nature of dismissal under Rule 41(e)). If a case has not been brought to trial within five years and the parties do not stipulate to an extension, the court must dismiss the case. This aspect is mandatory.

Nevada's rule does have a discretionary aspect. The last sentence of 41(e) states that "[a] dismissal under this subdivision (e) is a bar to another action upon the same claim for relief against the same defendants unless the court otherwise provides." Accordingly, courts may dismiss these lingering actions with prejudice or without prejudice. *United Ass'n of Journeymen & Apprentices v. Manson,* 105 Nev. 816, 821, 783 P.2d 955, 958 (1989).

Although the possibility of dismissal without prejudice imparts an element of discretion, the rule still permits less discretion than did the California rule at issue in *Olympic. Olympic,* therefore, does not dispositively answer the question whether the Nevada and federal rule are coextensive.

Van Blitter interprets the case law to require a "direct collision between the Federal Rule and the state law" before the rules will be deemed coextensive. *Walker v. Armco Steel Corp.,* 446 U.S. 740, 749, 100 S.Ct. 1978, 1984, 64 L.Ed.2d 659 (1980)

(citation and internal quotation omitted). The *Olympic* dissent stressed this interpretation. *Olympic,* 760 F.2d at 917 (Wallace, J., dissenting). Van Blitter perceives no direct collision here because the rules differ somewhat in scope. The federal rule does not require dismissal at any point; the Nevada rule requires dismissal after five years. Accordingly, she argues that the rules do not directly collide and so are not coextensive.

A Supreme Court decision handed down after *Olympic* clarified the meaning of its "inquiry into whether there is a 'direct collision' between state and federal law." *Stewart Org. v. Ricoh Corp.,* 487 U.S. 22, 26 n. 4, 108 S.Ct. 2239, 2242 n. 4, 101 L.Ed.2d 22 (1988) (citing *Walker,* 446 U.S. at 749, 100 S.Ct. at 1984; *Hanna,* 380 U.S. at 472, 85 S.Ct. at 1144). The Court wrote that this "direct collision" language "is not meant to mandate that federal law and state law be perfectly coextensive and equally applicable to the issue at hand; rather, the 'direct collision' language, at least where the applicability of a federal statute is at issue, expresses the requirement that the federal statute be sufficiently broad to cover the point in dispute." *Id.* (citing *Hanna,* 380 U.S. at 472, 85 S.Ct. at 1144).

While not perfectly coextensive, the federal and Nevada involuntary dismissal rules conflict sufficiently to meet the standard. The federal rule is "sufficiently broad to cover the point in dispute" because it permits dismissal at (and before) the time that the Nevada rule requires dismissal.[3] Additionally, both rules aim to promote judicial housekeeping and diligent prosecution. Both rules also incorporate discretion, albeit in different degrees. Accordingly, we hold that the Federal Rule 41(b) and Nevada Rule 41(e) are coextensive.

### IV

Because the rules are coextensive, the *Hanna* analysis applies. *Olympic,* 760

---

five years after the plaintiff has filed his action, except where the parties have filed a stipulation in writing that the time may be extended.
*Olympic,* 760 F.2d at 915.

**3.** Nevada Rule 41(e) also permits dismissal for want of prosecution if a case has not been brought to trial within two years of filing.

F.2d at 914–15. We first consider whether the federal rule lies within the limits of Congress' constitutional power and the Rules Enabling Act, 28 U.S.C. § 2072. *Id.* at 916. The parties do not argue that the federal rule transcends either limit, and we perceive no reason to question Rule 41(b)'s validity.

We next consider whether *Erie* considerations require application of the state rule instead. *Id.* Looking to *Erie* does not involve a mechanical query into whether the choice of law could determine the litigation's outcome. As observed in *Olympic,* "every procedural rule may, at some point in litigation, be outcome-determinative." *Id.* at 914. With this truism in mind, we "look at the [federal] rule in light of the 'twin aims of the *Erie* rule: discouragement of forum-shopping and avoidance of inequitable administration of the laws.'" *Id.* (quoting *Hanna,* 380 U.S. at 468, 85 S.Ct. at 1142).

Applying the federal rule raises no forum shopping concerns. No rational plaintiff would file in federal court based on the expectation that after five years without a trial, dismissal would be discretionary rather than mandatory.

Applying the federal rule here raises minimal concerns about inequitable administration of the laws. Under both the federal rule and the Nevada rule, courts possess some discretion to account for reasonable diligence displayed by the parties. Under both rules, courts weigh the same policy considerations. Thus, *Erie* concerns do not "justify interrupting the normal function of the federal court processes." *Id.* at 915.

Van Blitter argues that the *Erie,* outcome-determinative analysis undertaken in *Ragan v. Merchants Transfer & Warehouse Co.,* 337 U.S. 530, 69 S.Ct. 1233, 93 L.Ed. 1520 (1949) and *Walker v. Armco Steel Corp.,* 446 U.S. 740, 100 S.Ct. 1978, 64 L.Ed.2d 659 (1980) controls here and requires application of the state rule. The *Ragan* Court held applicable a state rule that the statute of limitations is not tolled until there is service of process, rather than the federal rule that the action commences with the filing of the complaint. 337 U.S. at 533–34, 69 S.Ct. at 1235. The *Walker* Court similarly held that the federal rule did not speak to the question of tolling a statute of limitations and that the state rule applied. 446 U.S. at 753, 100 S.Ct. at 1986.

In both *Ragan* and *Walker,* the Court noted that the tolling provisions were integral parts of the states' statutes of limitations. *Walker,* 446 U.S. at 752, 100 S.Ct. at 1986; *Ragan,* 337 U.S. at 534, 69 S.Ct. at 1235. "Statutes of limitations, which dictate the life of state causes of action, are too intimately connected with the substance of the state-created right to be disregarded by the federal courts." *Olympic,* 760 F.2d at 913 (citing *Guaranty Trust Co. v. York,* 326 U.S. 99, 109–110, 65 S.Ct. 1464, 1470, 89 L.Ed. 2079 (1945)).

Unlike the state rules at issue in *Ragan* and *Walker,* Nevada's involuntary dismissal rule is not integral to the state's statute of limitations. First, the rule lacks the finality of a statute of limitations. A case could be dismissed without prejudice and then filed again. Second, the Nevada legislature specifically disagreed with a Nevada Supreme Court decision that required dismissal with prejudice based on policy considerations "parallel" to statutes of limitations. *See* Advisory Committee Notes to Nev.R.Civ.P. 41(e) (referring to *Dubin v. Harrell,* 79 Nev. 467, 471–72, 386 P.2d 729, 731 (1963)). The legislature expressed its disagreement by amending Rule 41(e) to allow dismissals without prejudice. Third, as with the state rule at issue in *Olympic,* the Nevada rule "regulates conduct in prosecuting a suit rather than barring commencement of a stale action." 760 F.2d at 916. As far as we have been able to discern, after *Dubin* Nevada courts have not considered Rule 41(e) in the nature of a statute of limitations.

### V

We hold that the federal rule and the Nevada rule are coextensive. Federal Rule 41(b) is valid and its application does not violate the purposes of *Erie.* Therefore,

the district court correctly looked to the federal rule. Its judgment is

AFFIRMED.