Eddie J. WESTER and Kyla R. Wester, husband and wife, Plaintiffs,

v.

CROWN CONTROLS CORPORATION, et al., Defendants.

No. CIV–94–1346–PHX–ROS.

United States District Court, D. Arizona.

July 20, 1996.

Kevin W. Keenan, Shawn Michael Cunningham, Harris & Palumbo PC, Phoenix, AZ, Paul Joseph McGoldrick, Shorall & Stevens, Phoenix, AZ, for Eddie J. Wester and Kyla R. Wester.

William T. Burghart, Christopher L. Callahan, Ann–Martha Andrews, Fennemore Craig, Phoenix, AZ, John C. Aisenbrey, Stinson Mag & Fizzell, Kansas City, MO, Paul G. Cereghini, William Francis Auther, Bowman & Brooke, Phoenix, AZ, John H. Tucker, Rhodes Hieronymus Jones Tucker & Gable, Tulsa, OK, for Crown Equipment Corp.

## ORDER

SILVER, District Judge.

Plaintiffs' Motion to Strike Defendant's Designation of Non–Parties At Fault is pending before the Court. Having considered the parties' briefs and arguments, the Court grants the Motion.

### Relevant Facts

Eddie J. Wester and Kyla R. Wester ("Plaintiffs") initiated this product liability action in Arizona state court. Plaintiffs allege Mr. Wester sustained severe injuries while operating a forklift manufactured by Crown Controls Corp. ("Defendant"). These injuries resulted when his forklift collided with another forklift at a warehouse operated by his employer, Smith's Food and Drug ("Smiths").

Defendant timely removed the action to this Federal District Court, grounding federal jurisdiction on diversity of citizenship. Subsequently, Defendant filed an Answer and the parties began extensive discovery.

On April 17, 1996, Defendant filed a pleading styled Designation of Non–Parties At Fault (hereinafter "Designation"). Under Arizona's version of the Uniform Contribution Among Tortfeasors Act ("UCATA"), a tort defendant may designate a non-party at fault and argue the non-party is responsible for all or part of the alleged negligence. A.R.S. § 12–2506(B). In the Designation, Defendant alleges that Smith's was wholly or partly responsible for Plaintiff's injuries. Specifically, Defendant alleges:

> Smith's uses a computer clock incentive/penalty pay system which encourages operators to perform at an unsafe pace; Smith's failed to supervise adequately the work habits of its operators; Smith's permitted unsafe traffic patterns in the warehouse; Smith's failed to enforce its established safety and traffic rules for truck operators.

(Designation at 2.)

On May 22, 1996, Plaintiffs filed the instant Motion to Strike. Plaintiffs argue the Designation is untimely under A.R.S. § 12–2506(B) and Ariz. R. Civ. P. 26(b)(5). In pertinent part, A.R.S. § 12–2506(B) provides:

> Negligence or fault of a non-party may be considered if . . . the defending party gives notice before trial, *in accordance with the requirements established by court rule,* that a non-party was wholly or partially at fault.

(Emphasis added.) Ariz. R. Civ. P. 26(b)(5) delineates the requirements for a valid notice of a non-party at fault. The rule states:

> (5) *Non-party at Fault.* Any party who alleges, pursuant to A.R.S. § 12–2506(B) (as amended), that a person or entity not a party to the action was wholly or partially at fault in causing any personal injury . . . shall provide the identity, location, and the facts supporting the claimed liability of such nonparty . . . within one hundred fifty (150) days after the filing of that party's answer.

Defendant filed its Answer on June 30, 1994. The 150–day period set forth in Ariz. R. Civ. P. 26(b)(5) elapsed on November 28, 1994, approximately a year and a half before Defendant filed the Designation. Consequently, Plaintiffs contend, the Designation is untimely and must be stricken. Defendant responds that the 150–day notice requirement is procedural, not substantive, and therefore inapplicable in this diversity action under the doctrine of *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

### Governing Legal Principles

In *Erie R.R. Co. v. Tompkins,* the Supreme Court departed from precedent and held that federal courts sitting in diversity must apply state substantive law and federal procedural rules. 304 U.S. at 78, 58 S.Ct. at 822. This holding was premised on the twin goals of discouraging forum shopping and avoiding inequitable administration of the laws. *Id.* at 74–78, 58 S.Ct. at 820–22. The high court's prior approach, which allowed federal courts to ignore state substantive law, undermined these goals by permitting noncitizens to discriminate against citizens: "It made rights . . . vary according to whether enforcement was sought in state or in the federal court; and the privilege of selecting the court in which the right should be determined was conferred upon the noncitizen." *Id.* at 74, 58 S.Ct. at 820.

Later Supreme Court decisions refined the distinction between substance and procedure. Instead of labelling a question substantive or procedural, the court indicated in *Guaranty Trust Co. v. York,* 326 U.S. 99, 108–10, 65 S.Ct. 1464, 1469–70, 89 L.Ed. 2079 (1945), that the relevant inquiry is whether a plaintiff could choose a different outcome for a lawsuit by filing it in federal rather than state court. The court then held that state statutes of limitations controlled in a diversity suit based on a state-created right. *Id.* at 109–10, 65 S.Ct. at 1469–70.

In *Hanna v. Plumer,* 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965), the Supreme Court drew a further distinction between situations covered by both a federal and state rule, and situations where no federal rule applies. In the latter situation, a court need only consider whether the policies underlying *Erie* warrant application of the state rule. *Id.* at 469–71, 85 S.Ct. at 1142–44. However, if both a state rule and a federal rule apply, a court must determine whether the federal rule is constitutional and within the scope of the Rules Enabling Act, 28 U.S.C. § 2072.

*Id.* at 471, 85 S.Ct. at 1144. A federal rule typically passes such a test if it is determined to have been enacted as a "housekeeping" rule for the federal court system. *Id.* at 472, 85 S.Ct. at 1144–45. If the federal rule is constitutional and valid, the court must then apply the *Erie* doctrine to determine whether the state rule nevertheless should govern. Under *Erie,* outcome-determination is one factor. *Id.* at 468–69, 85 S.Ct. at 1142–43. However, the more important factors are whether application of the state rule will discourage forum shopping and avoid inequitable administration of laws. *Id.* at 468, 85 S.Ct. at 1142.

The Ninth Circuit has synthesized these principles into a three-step approach:

> First, we must determine if the federal rule and state rule are actually coextensive. If the federal rule does not address the situation, there would be no conflict between the state and federal rules. We would then apply the *Erie* analysis to determine if the federal court should enforce the state rule. If the federal rule does address the situation ... [w]e would then apply the *Hanna* analysis: if the federal rule is within the scope of the constitutional power and the Rules Enabling Act, it applies unless the *Erie* considerations are so strong that they can justify interrupting the normal function of the federal court processes.

*Olympic Sports Products, Inc. v. Universal Athletic Sales,* 760 F.2d 910, 914–15 (9th Cir.1985), *cert. denied,* 474 U.S. 1060, 106 S.Ct. 804, 88 L.Ed.2d 780 (1986). *Accord, Aceves v. Allstate Ins. Co.,* 68 F.3d 1160, 1168 (9th Cir.1995); *Harvey's Wagon Wheel, Inc. v. Van Blitter,* 959 F.2d 153, 154–55 (9th Cir.1992).[1]

### Discussion

### I. The Federal and State Rules Are Coextensive

A federal and state rule need not overlap in every regard for *Hanna* purposes. Instead, courts must inquire whether the federal rule is "sufficiently broad to control the

issue before the Court." *Stewart Organization, Inc. v. Ricoh,* 487 U.S. 22, 26, 108 S.Ct. 2239, 2242, 101 L.Ed.2d 22 (1988).

■ At oral argument, Plaintiffs' counsel conceded the disclosures required by Ariz. R. Civ. P. 26(b)(5) would also be required under Fed.R.Civ.P. 26(a). The federal rule commands disclosure of information "relevant to disputed facts alleged with particularity in the pleadings." Fed.R.Civ.P. 26(a). Such information would encompass facts supporting the alleged liability of a non-party. Accordingly, federal discovery rules "are sufficiently broad to control the issue before the Court." *Ricoh,* 487 U.S. at 26, 108 S.Ct. at 2242.

### II. The Federal Rule is Constitutional and is Valid under the Rules Enabling Act

The parties have not addressed this question. The Court finds that Fed.R.Civ.P. 26 is constitutional and is valid under the Rules Enabling Act. *See Hanna,* 380 U.S. at 471, 85 S.Ct. at 1144 (Federal Rules of Civil Procedure are presumptively valid and constitutional).

### III. *Erie* Considerations Warrant Application of the State Rule

*Erie,* as reinterpreted by *Hanna,* requires the Court to determine whether application of the federal rule instead of the state rule would encourage forum shopping, result in the inequitable administration of the law and/or alter the outcome of the litigation. *Hanna,* 380 U.S. at 468–69, 85 S.Ct. at 1142–43. The most critical factor is "whether the difference between the two rules would be relevant to plaintiff's initial choice of forum." *Olympic,* 760 F.2d at 914.

### A. Forum Shopping and Inequitable Administration of the Laws

■ The Court finds that a failure to apply the state rule in federal court would encourage forum shopping and foster inequi-

---

1. Defendant cites *Murphy v. Schering Corp.,* 878 F.Supp. 124 (N.D.Ill.1995), for the proposition that a state rule of civil procedure is *per se* inapplicable in a federal diversity action. The *Murphy* court failed to consider whether its fail-

ure to apply the state rule would encourage forum shopping, foster inequitable administration of laws or alter the outcome of the litigation. Accordingly, *Murphy* likely was wrongly decided and should not be followed.

ty. Arizona state courts recognize that Ariz. R. Civ. P. 26(b)(5) and A.R.S. § 12–2506(B) work together to protect the substantive rights of a plaintiff: "[T]he purpose of the statute and the rule is to identify for the plaintiff any unknown persons or entities who may have caused the injury in time to allow the plaintiff to bring them into the action before the statute of limitations expires...." *LyphoMed, Inc. v. Superior Court,* 172 Ariz. 423, 837 P.2d 1158, 1163 (1992). *See also Soto v. Brinkerhoff,* 183 Ariz. 333, 903 P.2d 641, 645 (1995) (rule's "primary purpose" is to identify unknown tortfeasors to allow plaintiff to sue them before statute of limitations runs). These cases indicate that the early notice rule is intimately connected to Arizona's tort liability scheme, which strikes a balance between a defendant's right to liability commensurate with fault and a plaintiff's right to full recovery. *Cf. Guaranty Trust,* 326 U.S. at 109–10, 65 S.Ct. at 1470 (state statutes of limitations are too intimately connected with the substance of state-created rights to be disregarded by federal courts).

A failure to apply Ariz. R. Civ. P. 26(b)(5) would upset that balance by conferring a significant litigation advantage upon defendants: If the rule does not apply in federal court, a defendant who removes could sandbag a plaintiff by refusing to conduct discovery or disclose relevant information regarding non-parties at fault until the statute of limitations has run. This advantage indicates that nonapplication of the rule in federal court would encourage forum shopping and foster inequity.[2]

Defendant contends that application of the Arizona rule in this case would work an undue hardship on it because under the rule they would have had to designate a non-party at fault by November 28, 1994—long before significant discovery began. However, any possible hardship may be mitigated by the rule's exception for newly discovered evidence. *See* Ariz. R. Civ. P. 26(b)(5) (non-disclosed evidence concerning non-parties at

fault may be used at trial upon motion establishing newly discovered evidence). In addition, Defendants could escape a draconian application of the rule by making a showing of excusable neglect.

Defendant further argues that application of the state rule would be unfair because the rule was designed to work in conjunction with other fast track litigation rules set forth in the Arizona Rules of Civil Procedure. Applying the rule in federal court, where cases generally proceed at a slower pace, would wrench the state rule out of its proper context.

This argument is powerful but unavailing. First, the different procedural context of federal litigation is a factor that a court would consider in applying an exception to the rule or finding excusable neglect. Second, the argument is based on a faulty premise. The 150–day notice requirement is designed primarily to give a plaintiff sufficient time to add a non-party at fault before the statute of limitations runs. *See, e.g., LyphoMed,* 837 P.2d at 1163. Because the same statute of limitations applies regardless of whether the suit is in state or federal court, *see Guaranty Trust,* 326 U.S. at 108, 65 S.Ct. at 1469, the goal of affording early notice to the plaintiff is equally salient in state and federal court. Thus, applying the rule in federal court would not take the rule out of its intended "context."

## B. Outcome-Determination

This is the least important *Erie* factor. *Hanna,* 380 U.S. at 468–69, 85 S.Ct. at 1142–43. In this case, it is difficult to predict the impact of the state rule on the outcome of this litigation. Plaintiffs' counsel represented at oral argument that it cannot sue Smith's because Plaintiff's recovery against Smith's is limited to a claim for workman's compensation. Therefore, even if Plaintiffs had received timely notice of Defendant's intent to name Smith's as a non-party at

---

**2.** Defendant contends that Plaintiffs suffered no actual prejudice here, because they also could have discovered facts relating to Smith's potential responsibility. This argument misses the mark. The Arizona statute and rule put the burden on Defendant to argue non-party liability.

Thus, under Arizona law, Defendant should have engaged in early and extensive discovery on the issue of non-parties at fault, or at least sought an extension of time to do so. Even if Plaintiffs suffered no prejudice, this does not excuse Defendant's failure to follow the law.

fault, Plaintiffs would not have been able to add Smith's.

Nevertheless, if Defendant is precluded from making a non-party at fault argument at trial, Defendant could be faced with a damages verdict different (and higher) than one that a jury might otherwise return.

## IV. Conclusion

*Erie* considerations strongly support the application of Ariz. R. Civ. P. 26(b)(5) in this diversity case. The 150–day notice rule is inextricably intertwined with UCATA's substantive rules governing the allocation of liability among named and un-named parties. This is so not only because A.R.S. § 12–2506(B) and Ariz. R. Civ. P. 26(b)(5) explicitly refer to each other, but also because Arizona state court cases discussing the statute and rule construe them together and hold that they are designed to protect the substantive rights of tort plaintiffs. A failure to apply the state rule in federal court would encourage forum shopping and result in discrimination against resident plaintiffs, because non-resident defendants would be able to sandbag plaintiffs by deliberately holding back information about non-parties at fault until the limitations statute runs. A failure to apply the state rule could also affect the amount of damages awarded at trial, thereby altering the outcome of the litigation. Consequently, the Court finds that the 150–day requirement applies in this action. Plaintiffs' Motion is granted.

Accordingly,

**IT IS ORDERED** granting Plaintiffs' Motion to Strike Defendant Crown Equipment Corporation's Designation of Non–Parties At Fault (Doc. No. 84). The Clerk of the Court is directed to strike Defendant's Designation of Non–Parties at Fault (Doc. No. 78).