CALDAS & SONS, INC. and Angelo CALDAS, Plaintiffs,

v.

Ben H. WILLINGHAM, Jr., et al., Defendants.

Andrew R. CARR, et al., Plaintiffs,

v.

G. Rives NEBLETT, et al., Defendants.

Nos. DC90–40–B–O, DC90–63–B–O.

United States District Court, N.D. Mississippi, Delta Division.

Feb. 12, 1992.

---

W.O. Luckett, Jr., Michael T. Lewis, Clarksdale, Miss., for plaintiffs.

Tommie Williams, Greenwood, Miss., Merkel & Cocke, Clarksdale, Miss., S. Allan Alexander, Oxford, Miss., Andrew R. Carr, Jr., Memphis, Tenn., for defendants.

## MEMORANDUM OPINION

BIGGERS, District Judge.

This cause comes before the court on the motions to dismiss of defendants Ben Willingham, Jr., Corim AGRI Inc., Corim, Inc., Carl W. Stowe, and G. Rives Neblett pursuant to Rule 12 of the Federal Rules of Civil Procedure. Two separate motions to dismiss were filed by the defendants in this cause. The first motion was filed on March 27, 1990 and the second on October 25, 1990. The court, pursuant to Rule 12(c), treats these motions as ones for summary judgement on the grounds asserted therein, since the defendant's motions are predicated upon several affidavits and numerous exhibits going far beyond the pleadings in this matter. Upon the parties' pleadings, memoranda, depositions and affidavits on file, the court is in a position to rule.[1]

## FACTS

This action was commenced on January 31, 1990, by plaintiff Caldas & Sons, Incorporated, a Missouri Corporation wholly owned by plaintiff Angelo Caldas, a citizen and resident of Portugal, filing a complaint

---

1. The plaintiffs' motion to strike the affidavit of Ben Willingham will be denied. The court has considered the affidavit and finds it in no way helpful to the resolution of the issues.

against the above named defendants alleging breach of contract and fraud connected with the purchase of property in Mississippi. The defendant Ben Willingham, a United States citizen and resident of Switzerland, is the president of Corim, Inc., a Georgia Corporation wholly owned by Corim AG, a Swiss corporation which is not a party to the present dispute. Corim AGRI Inc. was a wholly owned subsidiary of Corim Incorporated but was merged with Corim, Inc. prior to the initiation of this lawsuit. Carl W. Stowe, a resident of Georgia, was a former employee of the defendant Corim, Inc. and also the former secretary and treasurer for plaintiff Caldas & Sons. For the sake of brevity, the court will hereafter refer to the above named four defendants, Willingham, Stowe, Corim Agri Inc., and Corim, Inc. as the "Corim defendants." Defendant Rives Neblett is an attorney, real estate broker and resident of Mississippi. The Corim defendants first moved to dismiss the plaintiff's complaint on several grounds on March 27, 1990, to which the defendant Neblett joined on April 10, 1990.

Although this case involves numerous factual disputes, the court finds the basic facts for purposes of the defendants' motions to dismiss as follows: On July 16, 1984, plaintiff Don Angelo Castello Branco Cerqueira Caldas signed a sales agreement with Corim, Inc. for the purchase of 983 acres described by Corim as the Walnut Bayou Farm, primarily agricultural property located in Bolivar County, Mississippi, for a purchase price of $1,277,900.00 (hereinafter the Corim–Caldas contract). Corim also agreed to manage the property for a period of 3½ years. The contract was negotiated entirely and entered into on the European continent between Rolf Schlegal, an officer of Corim Agri Inc./Corim, Inc., and Caldas. At the time of the execution of the sales agreement, the parties agreed that defendants Corim, Willingham and Stowe would form a corporation known as Caldas and Sons, Inc., into which title to the land would be conveyed. That entity was incorporated by defendant Carl W. Stowe and was issued its articles by the state of Georgia on December 5, 1984.[2]

On July 19, 1984, Corim Inc. entered into a sales agreement with Andrew and Virginia Carr for the purchase of the Carr's "Cloverdale Place," the same 983 acres which Corim had on July 16th contracted to sell to plaintiff Caldas (hereinafter the Carr–Corim contract). In 1989, after the land management contract had expired, Caldas & Sons engaged a new land management agent, Steve Kovac, to supervise the farming operations at Walnut Bayou Farm. Kovac informed Caldas in essence that Corim had purchased the property from the Carrs for $1,050.00 per acre at approximately the same time Corim sold the property to Caldas. After learning of the temporal proximity of the two transactions and this disparity in price, Andrew and Virginia Carr instituted an action against their attorney G. Rives Neblett (who handled the transaction) and the Corim defendants in the Circuit Court of Coahoma County, Mississippi on September 29, 1989, alleging breach of fiduciary duty, fraud, and legal malpractice against Neblett and asserting fraud and RICO claims against all defendants. That action was subsequently removed to this court, and both the Caldas and Carr suits have been consolidated. The Corim defendants moved on May 21, 1991 for summary judgement in this consolidated action, though on alternative grounds. Likewise, Neblett moved for partial summary judgement on May 24, 1991 against both plaintiffs on their RICO claims. Those motions are not being considered at this time but will be ruled on at a later date.

The defendants' motions to dismiss are based primarily upon the application of a

---

**2.** Caldas & Sons subsequently incorporated in the State of Missouri on September 11, 1989, slightly over four months prior to the corporation's filing suit. The date of incorporation prompted the defendants to question the motives of the plaintiff and formed the basis for their argument to dismiss on the grounds of collusive assignment in violation of 28 U.S.C. § 1359. It has never been disputed that Angelo Caldas was sole owner and shareholder of his corporate identity. As stated, *infra*, Angelo Caldas was subsequently joined as a plaintiff by amendment, thus mooting this basis for dismissal.

forum selection clause embodied in the Corim–Caldas contract signed by the parties for the sale of the land. Item 12 of this agreement states that "The laws and courts of Zurich are applicable." The defendants' alternative grounds to dismiss as asserted in the March 27th motion were (1) the failure to join Angelo Caldas as an indispensable party; (2) that the plaintiff Caldas & Sons lacked the capacity to sue; (3) that there existed no diversity jurisdiction by reason of collusive assignment in violation of 28 U.S.C. § 1359; and (4) that the plaintiff's RICO claims were barred by the applicable statute of limitations. The plaintiff responded to the motion and the magistrate, over the objections of the defendants, allowed the plaintiff to amend his complaint to add Angelo Caldas as a party, thus mooting defendants' grounds for dismissal on grounds (1), (2) and (3). The October 25th motion duplicates the March 27th motion but omits grounds (1) and (2). The statute of limitations defense and forum selection issue remain.

■ The court finds no merit in the defendants' argument that the plaintiff's RICO claims are barred by the applicable statute of limitations. Based on *Agency Holding Corp. v. Malley–Duff & Associates*, 483 U.S. 143, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987), the plaintiff has four years to assert its RICO claims against the defendants. However, in the case of fraud, the limitations period begins to run when the injured party discovers, or by exercise of reasonable diligence should have discovered, the alleged fraud. *La Porte Constr. Co. v. Bayshore Nat'l Bank*, 805 F.2d 1254 (5th Cir.1986). The plaintiff's allegations of fraud stem from the information supplied through his land agent Kovac in 1988. The court finds sufficient evidence to indicate that through the exercise of reasonable diligence he would not have discovered the fraudulent acts or scheme alleged in this action insofar as Corim, Inc. remained his agent for the management of the property in issue until Caldas retained Kovac in 1988. His complaint, filed the last day of January, 1990, in the opinion of the court, is thus timely under the applicable statute of limitations.

■ The forum selection clause presents a closer question. The defendants urge this court to dismiss this action based on the seminal Supreme Court decision in *M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972). Caldas has responded with a separate line of case precedent that involves scrutiny of the forum selection clause alone to determine if such a provision is mandatory or permissive in its scope. *Keaty v. Freeport Indonesia, Inc.*, 503 F.2d 955 (5th Cir. 1974). Alternatively, Caldas argues that the facts of this case fall under the fraud exception to *The Bremen* doctrine.

In *The Bremen*, an American corporation, Zapata, contracted with a German corporation, Unterweser, for the towage of Zapata's drilling rig from Louisiana to a point off the coast of Italy. The agreement between the parties provided that "Any dispute arising must be treated before the London Court of Justice." After a storm in the Gulf of Mexico seriously damaged the rig, Zapata sued Unterweser in admiralty in federal court in Tampa, Florida. Unterweser moved to dismiss on the basis of the forum selection clause which was denied by the district court and affirmed by the Fifth Circuit Court of Appeals. The Supreme Court vacated and remanded noting that "a freely negotiated private international agreement, unaffected by fraud, undue influence, or overweening bargaining power, such as that involved here should be given full effect." *The Bremen*, 407 U.S. at 12–13, 92 S.Ct. at 1914–15. Without defining the circumstances that would make enforcement of a forum selection clause unreasonable, the court discussed a number of factors that made enforcement of the clause at issue reasonable. Since *The Bremen*, the law is well established that absent evidence submitted by the party opposing enforcement of the clause to establish fraud, undue influence, overweening bargaining power, or a degree of inconvenience to the party that rises to the level of depriving him of his day in court, the provision should be enforced. *Pelleport Investors, Inc. v. Budco*

*Quality Theatres, Inc.*, 741 F.2d 273 (9th Cir.1984).

Characterizing this contract as a "private international agreement", the defendants cite to the fact that the contract containing the clause was negotiated entirely in Europe by two sophisticated businessmen. The defendants also assert that the clause was placed in the agreement at the insistence of Caldas because his banks and attorneys were located in Switzerland. The court, however, can find nothing in the record to support the defendants' argument on this point. In review of the deposition testimony cited for this proposition, it appears to the court that Corim proposed the provision to which Caldas assented. At best, however, a genuine issue exists as to the actual party proposing inclusion of the clause.[3]

■ The plaintiff responds that *The Bremen* exception for fraud applies, though the court is not convinced by this argument. As noted above, while fraud is a specific exception to *The Bremen* doctrine, the plaintiff must show that the alleged fraud or misrepresentation induced the party to agree to inclusion of the clause in the contract. A general claim of fraud or misrepresentation as to the entire contract would not affect the validity of the forum selection clause itself. *Moses v. Business Card Express, Inc.*, 929 F.2d 1131 (6th Cir.1991). While the plaintiff has made many specific allegations of fraud against these defendants arising from the moment of their acquaintance, including fraudulent inducement of the contract itself, there appears to be no evidence that the defendants practiced fraud in inducing agreement to the forum selection clause. *See Scherk v. Alberto–Culver Co.*, 417 U.S. 506, 519 n. 14, 94 S.Ct. 2449, 2457 n. 14, 41 L.Ed.2d 270.[4]

Alternatively, the plaintiff argues that the language of the clause permits this cause to be tried in this court as well as the courts of Zurich, since it is obviously permissive in nature rather than mandatory in application, relying on the Fifth Circuit Court of Appeals decision in *Keaty v. Freeport Indonesia, Inc.*, 503 F.2d 955 (5th Cir.1974). In *Keaty*, a resident of New Orleans, Louisiana entered into a two-year employment contract with Freeport Indonesia, Inc., a Delaware corporation doing business in Louisiana. Keaty's duties were to establish and supervise a job training program for Indonesians at the site of Freeport's Indonesia facilities. While still in Indonesia, Keaty's services were terminated prior to the expiration of the contract, and he filed suit in the Eastern District of Louisiana upon his return to the United States. Freeport moved to dismiss based on the following provision in Keaty's employment contract:

> This Agreement shall be construed and enforceable according to the law of the State of New York and the parties submit to the jurisdiction of the courts of New York.

The district court dismissed the action, and the Fifth Circuit reversed noting that "[i]t is apparent that the trial judge assumed that the contract provision in question constituted a mandatory forum-selection clause. This assumption we find to be erroneous." *Id.* at 956. The court noted initially that the contract on its face did not clearly limit the action to a specified locale. On this issue, the court specifically cited to the forum selection clause in *The Bremen* as an example of a provision which would so limit the cause. Rather, the court held that the clause was subject to opposing yet reasonable interpretations and since the contract including the clause was put into writing by the defendant Freeport, by construing the clause in favor of the plaintiff, the court found the provision fell short of qualifying as a mandatory forum selection clause. *Id.* at 957. In a similar case which applied this analysis, the Ninth Circuit in *Hunt Wesson Foods, Inc. v. Supreme Oil Co.*, 817 F.2d 75 (9th Cir.1987), held that the clause "the buyer and seller expressly

---

**3.** Defendants appear to have conceded this point along the way. In a subsequent supplementation to their October 25th motion to dismiss, defendant's cite to the deposition testimony of Caldas as evidence of his assent to the inclusion of the forum selection clause.

**4.** Whether the plaintiff qualifies under the fraud exception to *The Bremen*, however, is unnecessary to decide insofar as that question is not reached for the reasons which follow.

agree that the laws of the State of California shall govern the validity, construction, interpretation and effect of this contract ... [t]he courts of California, county of Orange, shall have jurisdiction over the parties in any action at law relating to the subject matter or the interpretation of this contract," was permissive. That court determined that "[a]lthough the word 'shall' is a mandatory term, here it mandates nothing than that the Orange County courts have jurisdiction." *Hunt*, 817 F.2d at 77. A clause that evidences only a consent by one party to the jurisdiction of the chosen forum of another is permissive. For enforcement of a clause which designates the proper forum, the language used must denote both mandatory and exclusive jurisdiction. *Id.* Alternatively, were the language used in the clause ambiguous, which the court concluded was not the case, construction against Hunt, the drafter, would lead to the same result. *Id.* at 78. Both *Keaty* and *Hunt* express the rule that where the forum selection clause only specifies jurisdiction without further limiting language to indicate the parties' intent to make that jurisdiction exclusive, the clause falls short of a mandate requiring judicial deference to the language used. *Compare Citro Flordia, Inc. v. Citrovale, SA*, 760 F.2d 1231 (11th Cir.1985) ("Place of jurisdiction is Sao Paulo/Brazil" held permissive); *Coface v. Optique Du Monde, Ltd.*, 521 F.Supp. 500 (S.D.N.Y.1980) ("... consent to the jurisdiction of the State and Federal courts sitting in New York in any action arising out of or connected in any way with this agreement ..." held permissive); *First Nat'l City Bank v. Nanz, Inc.*, 437 F.Supp. 184 (S.D.N.Y.1975) ("The Supreme Court of the State of New York within any county of the City of New York shall have jurisdiction of any dispute" held permissive); *with Pelleport Investors Inc. v. Budco Quality Theatres, Inc.*, 741 F.2d 273 (9th Cir.1984) ("[A]ny and all disputes arising out of or in connection with this Agreement shall be litigated only in the Superior Court for Los Angeles, California (and in no other), and Exhibitor hereby consents to the jurisdiction of said court" held mandatory); *Full–Sight Contact Lens Corp. v. Soft Lenses, Inc.*, 466 F.Supp. 71 (S.D.N.Y.1978) ("any suit brought by Distributor shall be brought in either San Diego or Los Angeles County" held mandatory). To harmonize this line of precedent with *The Bremen* prodigy, it would appear that the threshold question for the court to determine would be the scope of the language used in the disputed clause. If the language denotes exclusive jurisdiction (on its face or as interpreted if ambiguous), only then should the court determine if enforcement of the clause is nonetheless unreasonable under *The Bremen* considerations of overweening bargaining power, fraud or public policy of the forum requested by the plaintiff. *See Taylor v. Titan Midwest Constr. Corp.*, 474 F.Supp. 145 (N.D.Tex.1979) (district court addressed scope of venue provision prior to the enforceability analysis under *The Bremen*.) Conversely, if the language simply evidences the desire of the parties to consent to the jurisdiction stated in the clause, absent the basic jurisdiction questions which may arise such as subject matter jurisdiction, sufficient minimum contacts with the forum selected or the inconvenience necessitated by the plaintiff's selection, there is no burden for the plaintiff to overcome and his choice of forum should not lightly be disturbed.

Turning to the circumstances presented to the court in the present case, in the opinion of the court, the language used in the forum selection provision, "[t]he laws and courts of Zurich are applicable", is sufficiently vague to render the clause ambiguous as to the intent each party had evidenced by their agreement to the provision. Corim asserts that the clause clearly contemplates that the contract is to be enforced in the event of any breach of any duty by either party only in Zurich, Switzerland. Although there remains some doubt as to which party requested inclusion of the clause, it appears undisputed that the contract was put into writing by the defendant Corim, Inc. Further, Caldas states that he agreed to the inclusion of the clause because Rolf Schlegal, the drafter and negotiator for Corim, told him that if he failed to make payments under the contract, because his assets were located in Zurich, the only way for Corim to proceed against him would be in Zurich. Caldas

further states that by assenting to the clause, he did not believe that he would be forced to litigate any dispute involving the property in Zurich. This court takes note that the plaintiff's residence, the country of Portugal, is quite a distance from Zurich and that the headquarters of Corim AG, the parent corporation of Corim, Inc. and the former Corim Agri Inc., is in Switzerland. The court finds sufficient evidence to conclude that under these circumstances, Caldas' belief as to what the forum selection clause required of him is reasonable. Since the clause at issue in this case is sufficiently vague to be subject to two opposing yet reasonable interpretations of what was required by the parties in the event of a dispute involving the contract, construction of the clause would proceed against Corim, the party which drafted the agreement. *Keaty*, 503 F.2d at 957. It follows therefore that the provision as construed in favor of the plaintiff renders dismissal of this action on the defendant's grounds inappropriate.

Alternatively, were this court to agree with the defendant's argument that the wording of the provision is unambiguous, the result would be the same. It is clear that the language used in the contract, "[t]he laws and courts of Zurich are applicable" falls short of a mandate for this court to follow. Although jurisdiction is specified by the phrase, "the courts of Zurich" there is nothing mandatory in the language used to denote exclusive jurisdiction. It neither specifics what disputes under the agreement are to be resolved in Zurich nor which courts will apply. If, as asserted by Corim, the provision unambiguously contemplates that "any breach of any duty by either party" would be litigat-

ed in Zurich, there is no indication of this in the language used by their drafter.[5] Nor does the choice of Swiss law add anything to the analysis at this stage. Choice of law provisions like the judicial balancing of interests and litigant convenience are relevant considerations for the court upon motion to transfer under 28 U.S.C. § 140(a), or to dismiss under the common law doctrine of forum non conveniens.[6]

Because this court finds that the clause at issue in this case is permissive in scope, it is not necessary to decide whether or not the defendants' choice of forum is valid and enforceable per *The Bremen*. Accordingly, the defendants' motion to dismiss for improper venue is denied. An order in conformance with this opinion will issue.

---

5. Contrast the provision in *The Bremen*, a clause which unambiguously conveys in mandatory language that *"[a]ny dispute* arising *must* be treated before the *London Court of Justice"*.

6. The defendants' motion for dismissal is predicated upon application of the forum selection clause stated as follows: "Because of the contractual rights between the parties, this court lacks jurisdiction over the subject matter, and the persons of the defendants, and venue is improper." Here, there is complete diversity between all parties and the requisite amount in controversy is alleged without challenge. 28

U.S.C. § 1332. Furthermore, a forum selection clause does not oust a court of subject matter jurisdiction. *The Bremen*, 407 U.S. at 12, 92 S.Ct. at 1914. The defendants have argued throughout their motions to dismiss, in a general fashion, that Mississippi is an inconvenient forum. The defendants, however, have not put forth the required evidence to support their motion to dismiss on this ground as required by *In Re Air Crash Disaster Near New Orleans*, 821 F.2d 1147, 1164–65 (5th Cir.1987) *vacated on other grounds* 490 U.S. 1032, 109 S.Ct. 1928, 104 L.Ed.2d 400 (1989).