851 F.Supp. 1503 (1994)
PENDLETON ENTERPRISES, INC., Plaintiff,
v.
The IAMS COMPANY, Paramount Distributors, Inc., Wholesale Pet Food and Supply, Inc., Defendants.
No. 93-C-786-S.
United States District Court, D. Utah, Central Division.
May 4, 1994.
William L. Crawford, Salt Lake City, UT, Stephen D. Colbert, Colbert, Colbert, Milor, Colbert & Bolles, Ardmore, OK, for plaintiff.
Patricia W. Christensen, Kimball, Parr, Waddoups, Brown & Gee, Salt Lake City, UT, D. Jeffrey Ireland, Donald E. Burton, Faruki, Gilliam & Ireland, Dayton, OH, Kent B. Linebaugh, Jardine, Linebaugh, Brown & Dunn, Salt Lake City, UT, Gregory B. Kanan, Alice Marie de Stigter, Rothgerber, Appel, *1504 Powers & Johnson, Denver, CO, for defendants.
ORDER GRANTING THE DEFENDANT THE IAMS COMPANY'S MOTION TO CHANGE VENUE TO THE SOUTHERN DISTRICT OF OHIO
SAM, District Judge.
This matter came before the court on motion of the defendant The Iams Company ("Iams") to transfer venue to the United States District Court for the Southern District of Ohio, Western Division. For reasons discussed more fully below, the motion is granted.

I. BACKGROUND
The plaintiff, Pendleton Enterprises, Inc. ("Pendleton"), is a former distributor of Iams' pet food and products in Salt Lake City and Denver. Pendleton brought this action against Iams and two other distributors of Iams' products, Paramount Distributors, Inc. ("Paramount") and Wholesale Pet Food and Supply, Inc. ("Wholesale"). The complaint has nine counts, alleging: (1) violation of § 2 of the Clayton Act; (2) violation of § 3 of the Clayton Act; (3) fraudulent misrepresentation and deceit; (4) conspiracy to refuse to deal with the plaintiff, in violation of § 1 of the Sherman Act; (5) tortious interference with prospective contractual relationships; (6) resale price maintenance, in violation of § 1 of the Sherman Act; (7) breach of an oral agreement; (8) violation of the Colorado Deceptive Trade Practices Act; and (9) a claim for declaratory judgment that Iams cannot collect on a trade account payable in the sum of $21,934.38 because the parties' contracts violate the Utah and Idaho Unfair Practices Acts.
Iams has moved, pursuant to 28 U.S.C. § 1404(a), to change venue of this action to the Southern District of Ohio, Western Division (Dayton), for the convenience of the parties and witnesses and in the interest of justice. Iams also points to a forum selection clause in the two distributorship agreements between Iams and Pendleton, which provides:
The parties further agree that any action, suit in equity, arbitration proceeding or judicial proceeding for the enforcement of this Agreement or any provision hereof shall be instituted in the State of Ohio, more particularly ... in the United States District Court, Southern District of Ohio, Western Division.
(Section 13 of Distributorship Agreements, Exs. 1 & 2 to Memorandum in Support of The Iams Company' Motion to Transfer Venue.)
Pendleton maintains that the forum selection clause does not apply because: (1) the clause is permissive, not mandatory; (2) the clause does not apply to statutory claims for antitrust and other violations, but only to actions to enforce the two distributorship agreements; and (3) the clause does not apply to the defendant Paramount, who was not a party to these distributorship agreements.
Pendleton's third argument is not convincing because Paramount does not object to Iams' motion to change venue. (The other defendant, Wholesale, has been dismissed from the suit.) The first two arguments are discussed below.

II. DISCUSSION
A motion to change venue under § 1404(a) "calls on the district court to weigh in the balance a number of case-specific factors." Stewart Organization, Inc. v. Ricoh Corp., 487 U.S. 22, 29, 108 S.Ct. 2239, 2244, 101 L.Ed.2d 22 (1988). "The presence of a forum-selection clause ... will be a significant factor that figures centrally in the district court's calculus." Id. (emphasis added). Indeed, "the venue mandated by a choice of forum clause rarely will be outweighed by other 1404(a) factors." In re Ricoh Corp., 870 F.2d 570, 573 (11th Cir.1989).

A. Whether the forum selection clause is mandatory or permissive
A number of courts have held that where a forum selection clause only specifies jurisdiction, without further limiting language to indicate the parties' intent to make that jurisdiction exclusive, the clause is not mandatory. E.g., Hunt Wesson Foods, Inc. v. Supreme Oil Co., 817 F.2d 75 (9th Cir.1987) ("courts of California, county of Orange, shall have jurisdiction over the parties in any action at law relating to the subject matter or *1505 the interpretation of this contract" held permissive); Citro Florida, Inc. v. Citrovale, SA, 760 F.2d 1231 (11th Cir.1985) ("Place of jurisdiction is Sao Paulo/Brazil" held permissive); Caldas & Sons, Inc. v. Willingham, 791 F.Supp. 614 (N.D.Miss.1992) ("The laws and courts of Zurich are applicable" held permissive).
On the other hand, where the clause refers to venue, specification of a forum is sufficient to make the clause mandatory. Milk `n' More v. Beavert, 963 F.2d 1342, 1345-45 (10th Cir.1992) ("venue shall be proper under this agreement in Johnson County, Kansas" held mandatory); Full-Sight Contact Lens Corp. v. Soft Lenses, Inc., 466 F.Supp. 71 (S.D.N.Y.1978) ("any suit brought by Distributor shall be brought in either San Diego or Los Angeles County" held mandatory). Cf. Utah Pizza Serv., Inc. v. Heigel, 784 F.Supp. 835, 838 (D.Utah 1992) ("Franchise Owner stipulates that the courts of the State of Michigan shall have personal jurisdiction over its person, that it shall submit to such personal jurisdiction, and that venue is proper in Michigan" held permissive and ambiguous).
The clause in these two distributorship agreements specifies a forum for venue ("any action ... shall be instituted in the State of Ohio, more particularly ... in the United States District Court, Southern District of Ohio, Western Division") and is therefore mandatory.

B. Scope of the forum selection clause
The forum selection clause does not apply to all claims between the parties, but it does apply to "any action ... for the enforcement of this [distributorship] Agreement or any provision hereof" (emphasis added). The clause does not necessarily apply to statutory antitrust or unfair practices claims; however, Pendleton also raises several contract or quasi-contractual claims.
Count seven alleges breach of an oral agreement "to enter into consecutive one year contracts as long as Pendleton made certain capital expenditures and met IAMS sales requirements." (Complaint at 12.) The complaint does not indicate when this oral agreement was made, but such an oral agreement appears to violate the following provisions in the distributorship agreements:
This Agreement together with the Company's standard terms and conditions of sale represent the entire Agreement between the parties ...
(§ 13, Distributorship Agreements).
THIS AGREEMENT SUPERSEDES ALL PRIOR, EXISTING, AND CONTEMPORANEOUS AGREEMENTS, WHETHER WRITTEN OR ORAL, BETWEEN THE PARTIES HERETO RELATING TO THE DISTRIBUTION OR SALE OF THE COMPANY'S PRODUCTS.
(§ 16, Id.).
Where enforcement of a provision of the distributorship agreements is clearly a defense to a claim, that claim should be considered to fall within the scope of a forum-selection clause that applies to any action to enforce the provisions of the agreements. Otherwise, the intent of the clause might be defeated simply by winning a race to court.
Count nine seeks a declaratory judgment that Iams cannot collect on a trade account payable under the parties' "contracts" apparently the distributorship agreements, although this is not clear from Pendleton's complaint. Iams points out that count nine "seeks to void the distributorship agreements and thereby void a monetary obligation to Iams that arises under the agreements." (Defendant The Iams Company's Reply Memorandum, at 6.) Not only would enforcement of the distributorship agreements be a defense to count nine, but count nine is the mirror image of Iams' first claim for relief in the complaint it filed in the Southern District of Ohio, an "Action on Account for Amounts Owed to Iams" under the distributorship agreements. (Ex. A to Memorandum in Support of The Iams Company's Motion to Transfer Venue.)
Accordingly, the court finds that counts seven and nine are within the scope of the forum-selection clause of the distributorship agreements.

*1506 C. Convenience of parties and witnesses

Iams' principal place of business is in Dayton, Ohio. The affidavit of attorney D. Jeffrey Ireland, submitted in support of the motion, shows in considerable detail that most of the company's records and witnesses are found in Dayton. (Ex. B. to Memorandum in Support of The Iams Company's Motion to Transfer Venue.)
Mr. Ireland compares this case to a case involving claims by other distributors, In re: the Iams Company Litigation, No. C3-93-346 (S.D.Ohio) (the "American Superior case"). He explains that, after Pendleton filed its claims in this action, Iams filed a complaint against Pendleton in the Southern District of Ohio. The Ohio case is assigned to Judge Walter H. Rice, the same judge who presided over the American Superior case. (Ex. A to Memorandum in Support of the Iams Company's Motion to Transfer Venue.)
Pendleton, an Idaho corporation, submitted three affidavits in support of its response that Utah is the more convenient forum. Attorney Stephen Colbert states in his affidavit that this case involves vertical price fixing between a manufacturer and its distributors in a regional market, whereas the American Superior case involved horizontal restraints and a national market area.
Nevertheless, the court is convinced that Pendleton's antitrust claims would focus on Iams' records and witnesses, most of which are found in Dayton.

D. Interests of justice
Pendleton argues that transferring the case to Ohio would not be in the interests of justice because Iams is trying to get the case before a court allegedly perceived as more favorable to Iams. However, Pendleton's accusations of "forum-shopping" are not only unsupported but they also ignore the fact that the Southern District of Ohio, Western Division, is the parties' agreed-upon forum for actions in which one of the parties seeks to enforce the terms of their agreements.
The fact that counts seven and nine of Pendleton's complaint are within the scope of the parties' mandatory, forum-selection clause is a "significant factor" in favor of transferring the case to Ohio. Although the court could transfer counts seven and nine, and retain the other counts here, the court believes that judicial economy would best be served by transferring the entire case. Moreover, as noted above, the antitrust claims would focus on records and witnesses that are found in Dayton, Ohio.

CONCLUSION
Accordingly, the defendant Iams' motion to change venue to the Southern District of Ohio, Western Division, is granted.
IT IS SO ORDERED.