MEMORANDUM OPINION AND ORDER
 

 KANE, Senior District Judge.
 

 I.
 
 BACKGROUND.
 

 Plaintiff Ervin Associates, Inc. (Ervin) is a nonminority contractor who, over the past six years, regularly provided physical inspection services to the Department of Housing and Urban Development (HUD). In the summer of 1996, HUD set aside 30% of its physical inspection procurement for award to a single contractor through the Small Business Administration’s Section 8(a) program (the “Set Aside Physical Inspection Procurement”).
 

 The 8(a) program (the “Program”), codified at 15 U.S.C. § 637, is a federal business development plan that targets “socially and
 
 *795
 
 economically disadvantaged small business concerns.” The Small Business Administration (SBA) awards procurement contracts to Program participants to furnish articles or perform construction work for the federal government.
 

 Ervin claims HUD’s decision to establish the Set Aside Physical Inspection Procurement impairs his equal protection rights by depriving him of the opportunity to compete for the procurement on an equal footing.
 
 [1]
 
 He claims the Program’s “social disadvantage” criterion is a race-based preference that must satisfy the strict scrutiny standard articulated by the Supreme Court in
 
 Adarand Constructors, Inc. v. Peña,
 
 — U.S. -, 115 S.Ct. 2097, 132 L.Ed.2d 158 (1995) to pass constitutional muster. Because HUD did not and is unable to justify its decision under the
 
 Adarand
 
 standard, Ervin asserts the decision violated both his constitutional rights and the Administrative Procedure Act (the “APA”), 5 U.S.C. § 551
 
 et seq.,
 
 and must be set aside.
 

 HUD may award the Set Aside Physical Inspection Procurement Contract as early as October 16, 1996. Ervin filed this action on August 19, 1996, seeking preliminary and permanent injunctive relief prohibiting Defendants from awarding the Physical Inspection Procurement Contract and from awarding any other contracts without first meeting the strict scrutiny requirements of
 
 Adarand.
 
 Simultaneously with his Complaint for Declaratory and Injunctive Relief, Ervin filed a Motion for Temporary Restraining Order and/or a Preliminary Injunction enjoining HUD from awarding the Set Aside Physical Inspection Procurement Contract.
 

 Based in part on the jurisdictional defenses raised by HUD and the fact that a related action brought by Ervin is presently pending in the United States District Court for the District of Columbia, I vacated a hearing that had been set on Ervin’s motion for preliminary injunction and denied Ervin’s Motion for Expedited Discovery related to his request for injunctive relief. Instead, I opted to consider first the questions of standing and venue, and, if necessary, Defendants’ request for transfer to the District of Columbia. Because I have decided to transfer pursuant to 28 U.S.C. § 1404(a), I will not rule on issues of standing. Suffice to say those issues are significant and possibly determinative of the action.
 

 II.
 
 THE SBA § 8(a) PROGRAM.
 

 Under the 8(a) Program, the SBA awards government procurement contracts to “socially and economically disadvantaged small business concerns.” 15 U.S.C.A. § 637(a)(1)(B) (1996 Supp.). A business qualifies as “a small business concern” if it is “independently owned and operated,” “is not dominant in its field,” and meets any other criteria specified by the SBA by which a business may determined to be “small” for the purposes of the Program.
 
 Id.,
 
 § 632(a)(1) & (2);
 
 see
 
 13 C.F.R. §§ 121, 124.102 (1996). A small business concern is “socially and economically disadvantaged” if at least 51% of the business is unconditionally owned by one or more individuals who meet the criteria for social and economic disadvantaged status. Id, § 637(a)(4)(A)(i)-(ii); 13 C.F.R. § 124.103-104.
 

 Congress has defined “socially disadvantaged individuals” as those who have been “subjected to racial or ethnic prejudice or cultural bias because of their identity as a member of a group [sic] without regard to their individual qualities.” 15 U.S.C. § 637(a)(5);
 
 see
 
 13 C.F.R. § 124.105. “Economically disadvantaged individuals” are those socially disadvantaged individuals “whose ability to compete in the free enterprise system has been impaired due to diminished capital and credit opportunities as compared to others in the same business area who are not socially disadvantaged.”
 
 Id.,
 
 § 637(a)(6)(A);
 
 see
 
 13 C.F.R. § 124.106.
 

 Under the Program, individuals who are members of certain racial groups are presumptively socially disadvantaged. 13 C.F.R. § 124.105(b). The presumption is rebuttable, however, and individuals who are not members of a designated group may
 
 *796
 
 establish their social disadvantage with “clear and convincing evidence.”
 
 Id.,
 
 § 124.105(c). If an individual demonstrates his background has “negatively impacted” his “entry into” or “advancement in” the business world, the SBA will consider him “socially disadvantaged.”
 
 Id.,
 
 § 124.105(c)(l)(v).
 

 However, the 8(a) Program is “not intended” to assist “socially disadvantaged individuals who have accumulated substantial wealth, who have unlimited growth potential or who have not experienced or have overcome impediments to obtaining access to financing, markets and resources.” 13 C.F.R. § 124.106(a)(l)(ii). Thus, even those individuals who are presumptively socially disadvantaged or who have established social disadvantage by clear and convincing evidence must also show they are economically disadvantaged to participate in the 8(a) Program. An individual whose personal net worth exceeds $250,000 will not be considered economically disadvantaged.
 
 Id.,
 
 § 124.106(a)(2)(i).
 

 A business can remain in the Program for a maximum of nine years, but only if it continues to meet all of the eligibility requirements throughout that period. 15 U.S.C. § 636(j)(10)(C); 13 C.F.R. § 124.110(a). A participant must “graduate” or leave the program early if it has attained its business objectives as set forth in its business plan on file with the SBA. 13 C.F.R. § 124.208(a).
 

 III.
 
 VENUE.
 

 Defendants move to dismiss for improper venue pursuant to Rule 12(b)(3), alternatively, to transfer for improper venue under 28 U.S.C. § 1406(a) or to transfer for convenience under 28 U.S.C. § 1404(a). I find venue is proper in this court but transfer for convenience pursuant to 28 U.S.C. § 1404(a).
 

 A.
 
 Venue Under 28 U.S.C. § 1891(e).
 

 Ervin claims venue in this district pursuant to 28 U.S.C. § 1391(e) which states as follows in pertinent part:
 

 A civil action in which a defendant is an officer or employee of the United States or an agency thereof acting in his official capacity or under color of legal authority, or an agency of the United States, or the United States, may, except as otherwise provided by law, be brought in any judicial district in which (1) a defendant in the action resides, (2) a substantial part of the events or omissions giving rise to the claim occurred ... or (3) the plaintiff resides.
 

 28 U.S.C. § 1391(e).
 

 Defendants argue venue pursuant to § 1391(e) is improper because (1) Defendants do not reside in this judicial district, but rather in Washington, D.C.; (2) although Ervin asserts “the procurements which are the subject of this Complaint are being administered from HUD’s Administrative Center in Denver, Colorado,” (Compl. ¶ 11), this procurement does not refute the fact that a substantial part of the events giving rise to the claims have occurred in Washington, D.C.; and (3) Ervin, a Delaware Corporation with principal place of business in Maryland, does not reside in this judicial district.
 

 “Once venue is attacked, the plaintiff bears the burden to show proper venue.”
 
 Andrean v. Secretary of the United States Army,
 
 840 F.Supp. 1414, 1422 (D.Kan.1993). However, a party moving to transfer the case on grounds of inconvenience, bears the burden of showing the existing forum is inconvenient.
 
 Chrysler Credit Corp. v. Country Chrysler, Inc.,
 
 928 F.2d 1509, 1515 (10th Cir.1991).
 

 Ervin argues “a substantial part of the events” giving rise to this action has occurred or will occur in Colorado. He points out HUD chose Colorado as the place in which to initiate the two physical inspection procurements at issue and conducted a “prebid conference” in Denver on July 1, 1996 attended by 45 potential bidders from various cities throughout the United States and three officials from HUD’s headquarters. Further, the Contracting Officer (the contractor’s main contact with the agency) resides in Colorado, and all directions, task orders, contract modifications and other events relating to the implementation of these contracts will occur from Colorado.
 

 Ervin correctly notes the fact that some of the events concerning these procurements
 
 *797
 
 also occurred in Washington, D.C., is immaterial for purposes of finding venue in this district because “‘[i]f the selected district’s contacts are “substantial,” it should make no difference that another’s are more so, or the most so.’ ”
 
 Merchants Nat. Bank v. SafraBank (California),
 
 776 F.Supp. 538, 541 (D.Kan.1991) (quotation omitted).
 
 See also Consumers Gas & Oil, Inc. v. Farmland Indus., Inc.,
 
 815 F.Supp. 1403, 1407 (D.CoIo. 1992) (holding “[s]ubstantial events may occur in more than one State making venue proper in more than one district”).
 

 Ervin has born his burden of showing a substantial part of the events giving rise to the claim in this action occurred or will occur in Colorado and that the requirements of 28 U.S.C. § 1391(e)(2) are satisfied. I therefore deny Defendants’ motion insofar as it seeks dismissal for improper venue on this basis pursuant to Rule 12(b)(3).
 

 B.
 
 Change of Venue Pursuant to 28 U.S.C. § U06(a) and 28 U.S.C. § im(a).
 

 Defendants further argue I must transfer or dismiss this ease for improper venue pursuant to 28 U.S.C. § 1406(a).
 
 [2]
 
 Alternatively, if I determine the venue is proper, Defendants request me to transfer the case to the District of Columbia “for the convenience of parties and witnesses, in the interest of justice” under 28 U.S.C. § 1404(a).
 
 [3]
 

 Defendants assert on August 1, 1996, Ervin filed a 207 page Amended Complaint for Preliminary and Permanent Injunctive Relief and Declaratory Relief in the United States District Court for the District of Columbia. (Defs.’ Mot. to Dismiss Improper Venue, Attach. C.) They argue the instant case must be dismissed because it is duplicative of the Washington, D.C. case, citing
 
 Cessna Aircraft Co. v. Brown:
 

 The rule is that the first federal district court which obtains jurisdiction of parties and issues should have priority and the second court should decline consideration of the action until the proceedings before the first court are terminated. The simultaneous prosecution in two different courts of cases relating to the same parties and issues “leads to wastefulness of time, energy and money.”
 

 348 F.2d 689, 692 (10th Cir.1965) (citations omitted).
 

 Defendants point out, with one exception, the named defendants are identical in the two complaints: Henry Cisneros (Secretary of HUD), HUD, Philip Lader (Administrator of the SBA), the SBA and the United States of America. The only Defendant in the District of Columbia action not named in the Colorado action is Helen Dunlap, from whom Ervin demands discovery in the Colorado action.
 

 Defendants assert the facts and claims at issue in the District of Columbia case are the same as those in the instant case. In both cases, Ervin challenges SBA’s 8(a) program and HUD’s use of that program under both constitutional
 
 Adarand
 
 grounds and APA grounds.
 

 Defendants
 
 note
 
 each complaint contains (1) verbatim allegations that Ervin’s existing physical inspection contract with HUD is being abrogated; (2) a Fifth Amendment equal protection challenge to HUD’s use of the section 8(a) program; and (3) an APA challenge against HUD. While the Colorado suit does not contain all of the counts found in the District of Columbia action, the latter contains all counts found in this action.
 
 [4]
 

 Defendants note Ervin has directly placed at issue in the District of Columbia case (a) his physical inspection contracts with HUD; (b) his allegations that HUD has reduced his
 
 *798
 
 work under Ms physical inspection contracts; (c) Ms allegations concerning Roybal, apparently an 8(a) firm that won a previous contract. (Defs.’ Mot. to Dismiss Improper Venue, Attach. C, Am.Compl. § 267.)
 

 Moreover, Defendants argue, both complaints seek the same type of relief, namely preliminary and permanent injunctive relief preventing Defendants from awarding any further contracts or task orders that Ervin would be entitled to perform under Ms existing contracts with HUD or Requests for Proposals that Ervin would be entitled to bid for or win where the prevention is based on the race of the contractors and HUD or SBA has not met the strict scrutiny standard of meeting a compelling governmental interest. In both cases, Ervin seeks to have HUD explain its various actions under the APA.
 

 Defendants point out after the District of Columbia suit was filed, Ervin’s counsel mailed two letters to Defendants’ counsel referencing “Physical Inspections H08R96005200000 & H08R96005300000” in the context of that law suit. (Mot. to Dismiss Improper Venue, Attachs. D, E.) Those are the “Physical Inspections” mentioned by number in the subject lawsuit. Defendants aver the letters support their position that the lawsuits are duplicative.
 

 In support of their request for dismissal of tMs suit as duplicative of that filed in the District of Columbia court, Defendants cite
 
 Abbott Laboratories v. Gardner,
 
 wMch held “[a] court may ... in its discretion dismiss a declaratory judgment or injunctive suit if the same issue is pending in litigation elsewhere.” 387 U.S. 136, 155, 87 S.Ct. 1507, 1519, 18 L.Ed.2d 681 (1967). Alternatively, they cite
 
 Abbott
 
 as authority that the venue transfer provision, 28 U.S.C. § 1404(a), can be invoked to consolidate actions.
 
 Id.
 

 Ervin urges me to reject Defendants’ contention that this action is duplicative of the District of Columbia action, asserting that the two suits are materially different. He terms the District of Columbia action a
 
 Bi
 
 vens
 
 [5]
 
 Action, involving broad allegations of misconduct by HUD officials and including,
 
 inter alia,
 
 allegations of HUD’s widespread and systemic abuse of the 8(a) program to award huge contracts to purportedly disadvantaged contractors who are favorites of Mgh-ranking political appointees. In contrast, Ervin asserts, the instant case involves narrow allegations of unconstitutionality of the two subject procurements.
 

 Ervin urges tMs court can efficiently decide the narrow claims in tMs case without encroaching on the broad ranging issues that will be adjudicated in the District of Columbia action.
 
 [6]
 

 In reply, Defendants note, although Ervin tries to characterize the District of Columbia action as a
 
 Bivens
 
 action, the amended complaint filed in that case does not seek relief appropriate in a
 
 Bivens
 
 action, namely, monetary relief. Rather, like the instant complaint, that action seeks injunctive and declaratory relief. Further, federal officials in their official capacities are not subject to a
 
 Bivens
 
 action, and, with one exception, the District of Columbia action is filed against federal agencies and officials in their official capacities.
 

 They also cite the August 23, 1996 Declaration of John Ervin attached to Ervin’s opposition to tMs motion detailing Ms allegations that HUD officials, including Helen DuMap, have a “personal agenda” that they are pursuing at Ervin’s expense. TMs allegation, Defendants assert, is also at the heart of the District of Columbia complaint and eliminates the pretense that Ervin seeks to litigate issues in tMs court that are different from those in the District of Columbia.
 

 Defendants additionally aver the two cases can be handled more efficiently and economically in the District of Columbia. They maintain, of the nine depositions noticed by Ervin, all but one of the deponents are located in Washington, D.C. Although HUD is using its Denver office to issue the 8(a) procurement as a matter of admimstrative convemence, Defendants point out the decision
 
 *799
 
 to procure the multifamily housing inspections on a national basis was made by officials in Washington, D.C. and the majority of individuals and documents relevant to this action are located there. Notably, Ervin is located in a Washington, D.C. suburb and therefore, will not be inconvenienced if this action is transferred to the District of Columbia.
 

 There are significant similarities between the District of Columbia ease and the present action, both with regard to the legal and factual issues, the causes of action and the relief sought. Although, I do not find venue to be improper in this court, I will transfer this case to the District of Columbia “for the convenience of the parties and witnesses, in the interest of justice” under 28 U.S.C. § 1404(a).
 

 “Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an ‘individualized, case-by-ease consideration of convenience and fairness.”’
 
 Stewart Org., Inc. v. Ricoh Corp., 487
 
 U.S. 22, 29, 108 S.Ct. 2239, 2244, 101 L.Ed.2d 22 (1988) (quoting
 
 Van Dusen v. Barrack,
 
 376 U.S. 612, 622, 84 S.Ct. 805, 812, 11 L.Ed.2d 945 (1964)). The right to transfer for convenience “lies within the sound judicial discretion of the trial judge.”
 
 Texas Eastern Transmission Corp., v. Marine Office-Appleton & Cox Corp.,
 
 579 F.2d 561, 567 (10th Cir.1978).
 

 In
 
 Chrysler Credit Corp. v. Country Chrysler, Inc.,
 
 the Tenth Circuit listed factors to be considered when adjudicating a Section 1404(a) motion to transfer:
 

 [t]he plaintiffs choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and, all other considerations of a practical nature that make a trial easy, expeditious and economical.
 

 928 F.2d 1509, 1515 (10th Cir.1991) (citing
 
 Texas Gulf Sulphur Co. v. Ritter,
 
 371 F.2d 145, 147 (10th Cir.1967)).
 

 Although the plaintiffs choice of forum is generally accorded due deference, where the plaintiffs choice of forum is not his residence, it is given much less weight in ruling on a discretionary transfer motion.
 
 Hartford Fire Ins. Co. v. Westinghouse Elec. Corp.,
 
 725 F.Supp. 317, 322 (S.D.Miss.1989).
 

 Taking into account the totality of circumstances, the fact that a very similar action is already pending in the District of Columbia encompassing the claims for relief in this suit and the parties, witnesses and records are principally located in Washington, D.C., “for the convenience of parties and witnesses, in the interests of justice,” I transfer this action to the United States District Court for the District of Columbia under 24 U.S.C. § 1404(a). This transfer of venue will allow that court to consider the most economic form of case management for the two related cases, the portent issues of standing, and the possibility of their consolidation for some or all purposes. Accordingly,
 

 IT IS ORDERED THAT this action is transferred to the United States District Court in the District of Columbia pursuant to 28 U.S.C. § 1404(a).
 

 [1]
 

 . Ervin also asserts the set-aside constitutes an unconstitutional taking of his existing contract with HUD without due process in violation of the Fifth Amendment, but does not expand on that theory of relief.
 

 [2]
 

 .
 
 "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.” 28 U.S.C. § 1406(a).
 

 [3]
 

 . "For the convenience of parties and witnesses, in the interest of justice, a district court may. transfer any civil action to any other district or division where it might have been brought.” 28 U.S.C. § 1404(a).
 

 [4]
 

 . Attached to Defendants' reply brief is a side-by-side chart comparing the complaints and demonstrating their correspondence. (Defs.’ Reply Br., Attach. 1.)
 

 [5]
 

 . Referring to
 
 Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,
 
 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).
 

 [6]
 

 . Ervin states the government has moved to dismiss the District of Columbia action. He urges me to reject the request for transfer on the grounds that, if the motion is successful, no action will he pending in that district. The fact that such motion is pending does not bear on my decision here.