**SEEBERGER ENTERPRISES, INC. et al., Plaintiffs,**

v.

**MIKE THOMPSON RECREATIONAL VEHICLES, INC. et al., Defendants.**

**No. EP–06–CV–115–PRM.**

United States District Court,
W.D. Texas,
El Paso Division.

Feb. 27, 2007.

See also 2007 WL 2372595.

Bernard Robert Given, II, Beck & Given, P.C., El Paso, TX, for Plaintiffs.

Andrew B. Krafsur, Jeff H. Ray, Ray, Valdez, McChristian & Jeans, P.C., El Paso, TX, Jay C. Gandhi, Paul, Hastings, Janofsky & Walker, LLP, John B. Stephens, Stephens Friedland, LLP, Todd Friedland, Stephens Friedland LLP, Costa Mesa, CA, for Defendants.

### ORDER GRANTING DEFENDANT'S MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404 AND TRANSFERRING CAUSE TO THE CENTRAL DISTRICT OF CALIFORNIA

MARTINEZ, District Judge.

On this day, the Court considered: (1) Defendant Mike Thompson Recreational Vehicles, Inc.'s ("MTRV") "Motion to Dismiss for Lack of Personal Jurisdiction ['Motion to Dismiss'], or Alternatively, to Transfer Venue ['Motion to Transfer']" and supporting Memorandum of Law, filed on April 7, 2006; (2) Plaintiffs Seeberger Enterprises, Inc. ("SEI"), RVSP Sales Pro, L.L.C. ("RVSP"), and Pre–Press Express International, Inc.'s ("Pre–Press") (collectively "Plaintiffs") "Opposition to Motion to Dismiss for Lack of Personal Jurisdiction, or Alternatively, to Transfer Venue and Brief in Support" ("Opposition"), filed on April 25, 2006; (3) MTRV's "Reply in Support of Motion to Dismiss for Lack of Personal Jurisdiction, or Alternatively, to Transfer Venue to the Central District of California" ("Reply"), filed on May 1, 2006; (4) MTRV's "Notice of Recent Developments," filed on June 8, 2006; (5) Plaintiffs' "Supplemental Brief in Support of Opposition to Motion to Dismiss for Lack of Personal Jurisdiction, or Alternatively, to Transfer Venue" ("Plaintiffs' Supplemental Brief"), filed on July 10, 2006; (6) MTRV's "Supplemental Brief in Support of Motion to Dismiss for Lack of

Personal Jurisdiction, or Alternatively, to Transfer Venue to the Central District of California" ("Defendant's Supplemental Brief"), filed on July 10, 2006; (7) MTRV's "Supplemental Brief of Mike Thompson Recreational Vehicles, Inc. Regarding Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404" ("Defendant's § 1404 Brief"), filed on January 19, 2007; (8) Plaintiffs' "Reply to Defendant's Supplemental Brief Under 28 U.S.C. § 1404" ("Plaintiffs' § 1404 Brief"), filed on January 25, 2007; (9) MTRV's "Reply Brief of Mike Thompson Recreational Vehicles, Inc. in Support of Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a)" ("Defendant's Reply § 1404 Brief"), filed on February 2, 2007; and the various other pleadings filed in the above-captioned cause.

In its Motion to Transfer, MTRV requests that the Court transfer the above-captioned cause to the Central District of California pursuant to 28 U.S.C. § 1404. Def.'s Mot. to Transfer 1. MTRV argues that the Court should transfer the cause pursuant to 28 U.S.C. § 1404 because of the presence of a forum-selection clause in a non-disclosure agreement and because California is a more convenient forum. Def.'s Memo. of Law 9–10. After careful consideration, the Court is of the opinion that MTRV's Motion to Transfer should be granted for the reasons that follow.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs SEI, RVSP, and Pre–Press are all businesses based in El Paso, Texas, that conduct business out of the home of Rick Seeberger ("Seeberger") and his wife, Susan. Pls.' § 1404 Br., Seeberger Aff. ¶¶ 2–3. SEI "serves as a holding company for the Seeberger family business investments." Pls.' Sec. Am. Compl. ¶ 1. RVSP

is a company formed by Seeberger to handle the marketing and licensing of a software program called Make–A–Deal. Id. ¶ 17. Pre–Press is an advertising, marketing, and consulting firm that provided services to MTRV, a recreational vehicle ("RV") dealership from March 1986 to early 2006. Id. ¶¶ 3, 10, 12.

Plaintiffs filed suit against MTRV on February 21, 2006, in state court in El Paso County, Texas, seeking declaratory judgment and asserting claims of breach of contract, fraud and misrepresentation, unjust enrichment, tortious interference with existing and prospective contractual relations, suit in quantum meruit, and suit to recover debt against MTRV. Def.'s Notice of Removal, Pls.' Orig. Pet. ¶¶ 25–44. The claims in Plaintiffs' original complaint arise from two sources: Plaintiffs' alleged rights to market and license the Make–A–Deal software and MTRV's refusal to pay certain invoices submitted by Pre–Press. Id., Pls.' Orig. Pet. ¶¶ 25–44. MTRV removed the suit to federal court on March 23, 2006, based on diversity as well as federal question jurisdiction, due to the copyright issues in Plaintiffs' claims. Id. ¶ 5.

On November 30, 2006, Plaintiffs filed an amended complaint, joining three additional defendants: Frank DeGelas, Tom Friedhof, and Louk Nienhuis.[1] DeGelas is the president of MTRV. Pls.' § 1404 Br., Seeberger Aff. ¶ 13(I). Friedhof is a former principal of Axiom Media, Inc. ("Axiom"), the company that developed the Make–A–Deal software. Pls.' Sec. Am. Compl. ¶¶ 14, 22, 34. Nienhuis was the national sales director for MTRV, Pls.' § 1404 Br., Seeberger Aff. ¶ 13(j); he retired in December 2006, Def.'s § 1404 Br. 5. DeGelas, Friedhof, and Nienhuis all reside in the Central District of California. Id.

---

1. At the Court's request, Plaintiffs filed a second amended complaint on February 2, 2007, separating their claims pursuant to Federal Rule of Civil Procedure 10(b).

Plaintiffs' claims against DeGelas and Nienhuis stem from Plaintiffs' alleged rights to market and license the Make–A–Deal software. Pls.' Sec. Am. Compl. ¶¶ 57–61, 66–68, 71–74. Plaintiffs allege a separate breach of contract claim against Friedhof, in which Plaintiffs claim that Friedhof breached a non-disclosure agreement. *Id.* ¶¶ 75–77. As of the date of this order, proof of execution of service on DeGelas, Friedhof, and Nienhuis has not been filed.[2]

On October 18, 2006, the Court denied MTRV's Motion to Dismiss, but did not rule on MTRV's Motion to Transfer. On January 12, 2007, the Court issued an order denying MTRV's Motion to Transfer pursuant to 28 U.S.C. § 1406, and requiring the parties to file supplemental briefing on MTRV's Motion to Transfer pursuant to 28 U.S.C. § 1404. The Court will now consider MTRV's Motion to Transfer pursuant to 28 U.S.C. § 1404.

## II. TRANSFER OF VENUE

### A. Legal Standard

28 U.S.C. § 1404(a) states: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). In the convenience analysis, the Court considers and weighs both private and public interest factors, and no factor is dispositive. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir.2004) (per curiam). "The private concerns include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.* "The public concerns include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case;" and (4) the avoidance of unnecessary problems in conflict of laws or in the application of foreign law. *Id.* Before embarking on a comparison of the two districts, "the first determination to be made is whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *Id.*

### B. Appropriateness of Requested Transferee District

MTRV removed the instant suit based on federal question jurisdiction and diversity jurisdiction. Def.'s Notice of Removal ¶ 5. Therefore, the courts in the Central District of California could exercise subject matter jurisdiction over Plaintiffs' claims. As for venue, 28 U.S.C. § 1391(b) provides: "A civil action wherein jurisdiction is not founded solely on diversity of citizenship may ... be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State." The residence of MTRV, a corporation, is determined by 28 U.S.C. § 1391(c): "For purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." MTRV "is a California corporation with its principal place of business in Santa Fe Springs, California."

---

2. The Court will consider the convenience of DeGelas, Friedhof, and Nienhuis, and the witnesses potentially involved in the claims against them in its § 1404 analysis. *See In re Volkswagen AG*, 371 F.3d 201, 204 (5th Cir. 2004) (per curiam) ("Given the broad generic applicability of the term 'parties' and the term 'witnesses,' such terms contemplate consideration of the parties and witness in all claims and controversies properly joined in a proceeding.").

Def.'s Supp. Br., Ex. B ¶ 2. All four of MTRV's dealerships are located within the Central District of California. Def.'s Reply § 1404 Br., Degelas Aff. ¶ 3. The Court finds that the foregoing contacts would render MTRV subject to personal jurisdiction in the Central District of California at the time Plaintiffs' suit was filed. Therefore, the Court concludes that Plaintiffs could have brought suit against MTRV in the Central District of California.

### C. Convenience of Parties and Witnesses

#### 1. Private Interest Concerns

##### a. Plaintiffs' Choice of Forum and the Forum-selection Clause

"To begin, the plaintiff is generally entitled to choose the forum." *Peteet v. Dow Chemical Co.*, 868 F.2d 1428, 1436 (5th Cir.1989). Plaintiffs' chosen forum is Texas, but Seeberger and Pre–Press also contractually agreed that litigation of certain claims would proceed only in the courts of California. The Supreme Court has considered the proper weight a district court should give a forum-selection clause when deciding whether to transfer venue, stating that "[a] motion to transfer under § 1404(a) ... calls on the district court to weigh in the balance a number of case-specific factors. The presence of a forum-selection clause ... will be a significant factor that figures centrally in the district court's calculus." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988). "The forum-selection clause ... should receive neither dispositive consideration ... nor no con-

sideration ...", but rather the consideration for which Congress provided in § 1404(a)." *Id.* at 31, 108 S.Ct. 2239.

▮ The forum-selection clause at issue appears in a "Confidentiality and Non–Disclosure Agreement" ("NDA") between Seeberger, both individually and on behalf of Pre–Press, and MTRV. Def.'s Supp. Br., Ex. A. The clause states: "Any disputes under this Agreement shall be subject to the exclusive jurisdiction and venue of the California state courts and the Federal courts located in Orange County, California. The parties hereby consent to the personal and exclusive jurisdiction and venue of these courts." *Id.*, Ex. A ¶ 14. "A forum selection provision in a written contract is *prima facie* valid and enforceable unless the opposing party shows that enforcement would be unreasonable." *Kevlin Servs., Inc. v. Lexington State Bank*, 46 F.3d 13, 15 (5th Cir.1995) (per curiam). Plaintiffs do not argue that enforcement of the clause would be unreasonable.[3] Rather, Plaintiffs maintain that transfer is inappropriate because the agreement does not govern the majority of Plaintiffs' claims, nor were all Plaintiffs signatories to the agreement. Pls.' Opp'n 3. MTRV counters that all of Plaintiffs' claims are "covered by the forum selection clause." Def.'s Supp. Br. 2. MTRV next argues that even if some of Plaintiffs' claims are outside the scope of the agreement containing the forum-selection clause, Plaintiffs' claims "stem from the parties' contractual relationship" and therefore should be transferred pursuant to the forum-selection clause. *Id.*

---

**3.** Plaintiffs challenge the validity of the NDA for the first time in the first round of supplemental briefing, arguing that MTRV did not sign the NDA. Pls.' Supp. Br. ¶ 2. However, Plaintiffs reference the agreement with no question as to its validity in their original complaint, Def.'s Notice of Removal, Pls.' Orig. Pet. ¶ 26(I), their Opposition, Pls.' Opp'n 7, their First Amended Complaint, Pls.'

First Am. Compl. ¶ 46(I), and their Second Amended Complaint, Pls.' Sec. Am. Compl. ¶ 46(I). Furthermore, in the second round of supplemental briefing, Plaintiffs abandon their contention that the NDA is invalid. Pls.' § 1404 Br. 3–4. Therefore, the Court will assume that Plaintiffs accept the validity of the NDA.

A brief outline of Plaintiffs' allegations is necessary to determine whether Plaintiffs' claims arise under the NDA. Plaintiffs assert that MTRV asked Pre–Press to oversee the development by Axiom of a software program called Make–A–Deal. Pls.' Sec. Am. Compl. ¶ 15. Next, MTRV allegedly promised that Seeberger and Axiom would be "permitted to market and license Make–ADeal" anywhere in the United States except the six counties "where MTRV does business." *Id.* ¶ 20. SEI and Axiom then entered into an agreement that provided RVSP with an exclusive software license for Make–A–Deal. *Id.* ¶ 16. MTRV subsequently purchased the source code for the Make–A–Deal software from Axiom; Plaintiffs allege that this purchase was "subject to the existing licensing and other contract rights held by SEI, Seeberger, and RVSP." *Id.* ¶ 25.

Plaintiffs' various causes of action against MTRV, DeGelas, and Nienhuis are based on (1) MTRV's alleged refusal to allow Plaintiffs to market and license the Make–A–Deal software and (2) Plaintiffs' request for compensation for previous contributions to the development of the Make–ADeal software. Pls.' Sec. Am. Compl. ¶¶ 38, 44, 53–61, 66–74. Plaintiffs assert additional claims against MTRV based on (1) MTRV's allegations that other software developed by Plaintiffs constitute derivative works of the Make–A–Deal software and (2) MTRV's termination of its agreement with Pre–Press and refusal to pay outstanding invoices.[4] *Id.* ¶¶ 46, 49–56, 62, 78–79.

The NDA was designed to protect any and all confidential information, as defined by the agreement, disclosed by MTRV to Pre–Press in connection with services provided by Pre–Press to MTRV. Def.'s Supp. Br., Ex. A at 1. At least one of Plaintiffs' claims, their request for a declaratory judgment "that Plaintiffs have not by their actions violated or breached any confidentiality or non-disclosure agreement with MTRV," clearly arises under the NDA. Pls.' Sec. Am. Compl. ¶ 46(I). However, the Court is of the opinion that none of the remainder of Plaintiffs' claims fall within the scope of the NDA.

While the NDA's definition of confidential information includes "computer programs," the Court is of the opinion that Plaintiffs' claims regarding their rights to license and market the MakeA–Deal software are unrelated to the NDA. Def.'s Supp. Br., Ex. A ¶ 1. Plaintiffs allege that they have a right to market and license the Make–A–Deal software, in which MTRV holds the copyright. The dispute is not over whether the NDA prevents Plaintiffs from distributing MTRV's copyrighted software; rather, the dispute is over what rights Plaintiffs maintain with respect to the software, given that MTRV holds the copyright. In fact, MTRV previously filed a motion to dismiss all of Plaintiffs' claims relating to their alleged right to market and license the Make–A–Deal software, arguing that such claims were pre-empted and barred by the Copyright Act; that motion did not mention the NDA.

Likewise, Plaintiffs' claims relating to the time and money put into the development of the Make–A–Deal software do not arise under or implicate the NDA. *Cf. Crescent Int'l, Inc. v. Avatar Cmtys., Inc.,* 857 F.2d 943, 944 (3d Cir.1988) (per curiam) ("[P]leading alternate non-contractual theories is not alone enough to avoid a forum selection clause if the claims asserted arise out of the contractual relation and implicate the contract's terms."), *quoted in* Def.'s Reply 3. Plaintiffs seek compensa-

---

4. Count Ten, Plaintiffs' claim against Friedhof for breach of contract of a separate nondisclosure agreement, is clearly unrelated to the NDA containing the forum-selection clause. Pls.' Sec. Am. Compl. ¶¶ 75–77.

tion for services performed; such claims are not related to an agreement not to disclose MTRV's confidential information.

Finally, Plaintiffs' request for declaratory judgment, that certain computer programs are not derivative works, arises under the Copyright Act, not the NDA. A finding that Plaintiffs' computer programs infringe MTRV's copyrighted software could possibly indicate that Plaintiffs breached the NDA, as the NDA prohibits Seeberger from using any confidential information provided by MTRV "for any purpose other than the Stated Purpose." Def.'s Supp. Br., Ex. A ¶ 3. However, the Court has already concluded that the issue of whether Plaintiffs breached any non-disclosure agreement, raised in Plaintiffs' request for declaratory judgment, clearly implicates the NDA. The particular question of whether one work constitutes a derivative work of another involves the application of the copyright laws, and is not merely an alternate non-contractual way of pleading a claim that clearly arises out of the contractual relationship established by the NDA.

In sum, the Court concludes that the mere inclusion of "computer programs" in the definition of "confidential information" does not bring Plaintiffs' claims relating to

the Make–A–Deal software within the purview of the NDA. Therefore, the forum-selection clause contained in the NDA is not applicable to Plaintiffs' claims relating to the Make–A–Deal software.[5]

■ While the forum-selection clause is not applicable to the majority of Plaintiffs' claims, the deference accorded Plaintiffs' choice of forum is tempered somewhat by the fact that Pre–Press entered into an agreement to litigate at least one of the instant claims in California. *See Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 880 (3d Cir.1995) ("[W]hile courts normally defer to a plaintiff's choice of forum, such deference is inappropriate where the plaintiff has already freely contractually chosen an appropriate venue.").

Furthermore, Plaintiffs filed the instant suit, seeking declaratory judgment on a number of issues as well as affirmative relief, the day after Seeberger asked MTRV for more time to respond to a settlement communication that included a draft copy of a complaint that MTRV intended to file in California. Def.'s Memo. of Law, Ex. D, Gandhi Aff. ¶¶ 3–5. While some of Plaintiffs' likely motivations for filing suit first in the district in which Plaintiffs' primary place of business is located,[6] such as convenience and cost, are

---

**5.** MTRV argues that Plaintiffs' claims relating to the invoices submitted to MTRV by Pre–Press relate to the Make–A–Deal software, and therefore should be covered by the forum-selection clause in the NDA. Def.'s Supp. Br. 5–6. Even assuming that all the disputed invoices were related to the Make–A–Deal software, the Court is of the opinion that such claims do not bear a sufficient relationship to the NDA, as the Court has already concluded that the mere involvement of the Make–A–Deal software in a cause of action does not automatically render the cause of action subject to the forum-selection clause. Therefore, the Court finds that the forum-selection clause contained in the NDA is not applicable to Plaintiffs' claims demanding payment for invoices submitted to MTRV.

**6.** MTRV's primary place of business and the residences of the three individual Defendants are in the transferee venue, and Plaintiffs' primary place of business is located in this district. Therefore, Defendants' convenience if the case proceeded in California does not weigh in favor of transfer, as merely shifting the burden of inconvenience is not an appropriate reason to transfer under § 1404(a). *See Van Dusen v. Barrack,* 376 U.S. 612, 645–46, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964) ("Section 1404(a) provides for transfer to a more convenient forum, not to a forum likely to prove equally convenient or inconvenient.").

legitimate, the anticipatory nature of the filing of the instant suit makes the Court inclined to accord less deference to Plaintiffs' choice of forum. *See Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 718 (7th Cir. 2002) (suggesting that the principle of according deference to a plaintiff's choice of forum "has less force" in a declaratory judgment action because the defendant is "the natural plaintiff") (internal quotation omitted); *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 73 (2d Cir.2001) (en banc) (stating in a *forum non conveniens* analysis that a court gives "greater deference to a plaintiff's forum choice to the extent it was motivated by legitimate reasons, including the plaintiff's convenience ... , and diminishing deference ... to the extent that it was motivated by tactical advantage").

### b. Availability of Compulsory Process and Costs for Willing Witnesses

■ "Often cited as the most important factor in passing on a motion to transfer under Section 1404(a) ... is the convenience of witnesses, most particularly non-party witnesses who are important to the resolution of the case." 15 CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3851 (3d ed.1998). The majority of the potential witnesses named by both Plaintiffs and MTRV reside in southern California.[7] Def.'s § 1404 Br. 5–7; Pls.' § 1404 Br., Seeberger Aff. ¶ 13. Furthermore, the Court finds that the testimony of several of these witnesses, particularly Seth Neistadt, the other principal of Axiom, and the vendors used by Pre–Press, will be highly relevant to Plaintiffs' claims. Therefore, the Court concludes that the quantity of witnesses in southern California, and more importantly, the quality of their expected testimony weigh in favor of transfer to California. *See* 15 WRIGHT, MILLER, & COOPER, *supra* § 3851 ("Obviously, one important or material witness may outweigh a great number of less important witnesses.").

Moreover, many of the witnesses that the Court believes will provide highly relevant testimony, such as Neistadt and the vendors, are non-party witnesses. MTRV argues that transfer is warranted because subpoenas for many of the proposed witnesses would be subject to motions to quash pursuant to Federal Rule of Civil Procedure 45(c)(3). Def.'s § 1404 Br. 7. Plaintiffs counter that testimony of the non-party witnesses can be procured through deposition. Pls.' § 1404 Br. 7. However, the Court believes that when weighing credibility, deposition testimony is a poor substitute for live testimony, particularly as Plaintiffs' claims involve reliance on oral statements, understandings

---

**7.** Plaintiffs list the following southern California residents as potential witnesses: the three individual defendants (Friedhof, Nienhuis, and DeGelas); Seth Neistadt; William Simpson, an attorney for MTRV; and Phil Martinelli, a former general sales manager of MTRV. Pls.' § 1404 Br., Seeberger Aff. ¶ 13. None of the non-party witnesses named by Plaintiffs are currently employed by MTRV. *Id.*, Seeberger Aff. ¶ 13. MTRV's list of potential witnesses in the Central District of California includes all the southern California residents named by Plaintiffs, as well as three MTRV employees, two persons associated with a vendor and expected to testify regarding the Pre–Press invoices, and an owner of an RV dealership expected to testify on issues relating to an alleged breach of the NDA. Def.'s § 1404 Br. 6–8. The only potential witnesses who are El Paso residents are Bill Clark, and Rick, Susan, and Matthew Seeberger. *Id.*; Pls.' § 1404 Br., Seeberger Aff. ¶ 13. According to Plaintiffs, Bill Clark "works for Outside the Box" and "has knowledge regarding the nature and extent of the consulting services provided to [MTRV] and the development of the Make–A–Deal software." *Id.*, Seeberger Aff. ¶ 13. Plaintiffs allege that Bill Clark assisted Seeberger in the negotiations between MTRV and Axiom. Pls.' Sec. Am. Compl. ¶ 22.

among the parties and some non-parties, and allegations of fraud. *See Scottish Air Int'l, Inc. v. British Caledonian Group, PLC*, 81 F.3d 1224, 1233 (2d Cir.1996) (finding live testimony to be crucial where the plaintiffs' "theories of recovery involve oral assurances"). Because the testimony of some key witnesses could be compelled in California if necessary, but not in Texas, this factor weighs heavily in favor of transfer.

As for the willing witnesses, Plaintiffs argue that "the Court should give little or no consideration to the convenience of the witnesses who are employees of [MTRV], as their testimony can be compelled." Pls.' § 1404 Br. 6. However, "the cost of attendance for willing witnesses" is a factor the Court must weigh in its analysis. *In re Volkswagen AG*, 371 F.3d at 203. The Court finds that the potential costs associated with live testimony in Texas by the numerous residents of southern California weigh heavily in favor of transfer. *See id.* at 204–05 ("When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled.").

### c. Other Practical Problems

■ The Court believes the relative financial strengths of the parties and the jurisdictional issues raised by MTRV to be relevant to its convenience analysis. Seeberger and his wife have recently filed for relief under the Bankruptcy Code, Pls.' § 1404 Br., Seeberger Aff. ¶ 12, and in April 2006, Pre–Press filed a Chapter 7 bankruptcy case, Pls.' Notice of Bankruptcy, Ex. 1. MTRV, the party requesting transfer, allegedly had annual sales of approximately $250 million in 2005. Pls.' Sec. Am. Compl. ¶ 12. While the Court does not have any information about the finances of the three individual defendants recently joined by Plaintiffs, the Court takes into consideration the potential financial hardship for Plaintiffs caused by transfer to California.

Additionally, both DeGelas and Friedhof have filed affidavits indicating their intent to challenge the Court's exercise of personal jurisdiction over them, once they are served with Plaintiffs' complaint. Def.'s Reply § 1404 Br., Friedhof Aff. ¶ 3; *id.*, DeGelas Aff. ¶ 4. The Court does not make a prediction as to the merits of these jurisdictional challenges, but finds that the challenges to jurisdiction create a potential for further delay in the proceedings in Plaintiffs' chosen venue. Furthermore, all of the meetings between Seeberger and DeGelas and/or Friedhof, involving the Make–A–Deal software and the marketing and advertising services, occurred in southern California, thus making California an appropriate venue. Def.'s Reply § 1404 Br., Friedhof Aff. ¶ 2; *id.*, DeGelas Aff. ¶ 2; *see Smith v. Carl Zeiss SMT, Inc.*, No. 1:05–CV–570–WJG–JMR, 2006 WL 2465680, at *3 (S.D.Miss. Aug. 24, 2006) (transferring a case where the only connection established by the plaintiff between the transferor district and the litigation was the plaintiff's residence).

### 2. Public Interest Concerns

■ The Court will now turn to the public interest concerns, which include "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case;" and (4) the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law. *In re Volkswagen AG*, 371 F.3d at 203. MTRV claims that the public interest concerns do not weigh in favor of either forum. Def.'s § 1404 Br. 10. Plaintiffs argue that the first factor weighs in favor

of their chosen forum, as the average time from filing to jury trial for civil cases here in the Western District of Texas is 6.5 months less than the average time in the transferee forum. Pls.' § 1404 Br., Ex. 2. However, the Court finds that the delay that will likely be caused by the jurisdictional challenges in this forum as well as the relatively small difference in docket congestion in the relative jurisdictions makes this factor less significant.

As for the other factors, the Court finds that both California and Texas have an interest in the resolution of claims involving local residents and businesses. The Court further finds that either forum is capable of applying federal law to the extent Plaintiffs' claims involve copyright law. While it is unclear whether Texas or California substantive law will govern the rest of Plaintiffs' claims, neither party has demonstrated that the resolution of Plaintiffs' claims will involve any thorny or unusual issues of state law, and courts in both venues are more equally able to resolve any choice of law issues presented by Plaintiffs' claims. *See* 15 WRIGHT, MILLER, & COOPER, *supra* § 3854 (having diversity cases tried in the state whose applicable law will govern is "given significantly less weight when the case involves basic or sufficiently well-established, as opposed to complex or unsettled, issues of state law"). Therefore, the Court concludes that none of the public interest concerns militate strongly in favor of either forum.

*D. Interest of Justice*

█ When weighing the interest of justice in transfer of venue motions, courts often mention "the desire to avoid multiplicity of litigation as a result of a single transaction or event." *Id.* MTRV argues that the existence of pending litigation in the California state courts weighs in favor of transfer, "so that the parties are not forced to fight an extremely inconvenient, expensive 'two-front war.'" Def.'s § 1404 Br. 9. The Court is unconvinced that pending state court litigation weighs in favor of transfer, as there is no possibility of consolidation of the instant federal litigation with the state court litigation or any conservation of judicial resources.[8] *Cf. Cont'l Grain Co. v. Barge FBL–585*, 364 U.S. 19, 26, 80 S.Ct. 1470, 4 L.Ed.2d 1540 (1960) ("To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that section 1404(a) was designed to prevent."). The Court further finds that there are no additional concerns particular to the instant case that have not already been addressed in the Court's convenience analysis.

### III. CONCLUSION

In sum, the Court finds the most compelling factors in favor of maintaining the litigation here in Texas are that Plaintiffs chose this forum, that Plaintiffs' principal place of business is El Paso, and that Pre–Press, Seeberger, and Seeberger's wife have filed for bankruptcy. The Court is not unsympathetic to the Seebergers' financial straits and is mindful that Texas is Plaintiffs' chosen forum. However, the Court does not find that these factors outweigh the convenience of the many witnesses, especially the non-party witnesses, who reside in the Central District of California. Furthermore, the Court is mindful that Pre–Press entered into an agreement to litigate certain claims, but specifically, at least one of the instant claims, in California. Therefore, the Court finds that the

---

8. Nor does the pending state court litigation in California affect the Court's convenience analysis, as there is no reason to assume that the common witnesses will testify at all trials during the same time period.

convenience of the witnesses outweighs the deference accorded to Plaintiffs' chosen forum and is of the opinion that MTRV's Motion to Transfer should be granted.

Accordingly, **IT IS ORDERED** that MTRV's "Motion to Transfer Pursuant to 28 U.S.C. § 1404" (Docket No. 12) is **GRANTED.**

**IT IS FURTHER ORDERED** that the above captioned cause be **TRANS-FERRED** to the Central District of California.